**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| [SEALED] | § § § § | Civil Action No. _____ |
| v. | § § § | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| [SEALED] | § § § § § § | **FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** |
| | § § | **DO NOT ENTER INTO PACER** |
| | § § | **DO NOT ENTER IN CM/ECF** |
| | § § § | **DO NOT PLACE IN PRESS BOX** |

# FILED UNDER SEAL

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, EX REL. RYAN PAUL CASTILLEJOS | § § § | Civil Action No. _____ |
| **Plaintiff-Relator** | § § § | *JURY TRIAL DEMANDED* |
| v. | § § § | **RELATOR'S COMPLAINT AND DEMAND FOR JURY TRIAL** |
| ESSENDANT CO.; S.P. RICHARDS COMPANY; FELLOWES, INC.; AXISCORE, LLC; REPLENISH INK, INC.; ACORN OFFICE PRODUCTS, LLC; FEDERAL MERCHANTS CORP.; ZEE TECHNOLOGIES, INC.; SEVA TECHNICAL SERVICES, INC.; WEBER COMPUTER SUPPLY, INC. D/B/A IBUYOFFICESUPPLY.COM; MENSCH MILL & LUMBER CORP.; MJL ENTERPRISES, LLC; SOURCE ONE MRO, INC.; NEW CENTURY TECHNOLOGIES INC.; HARDWARE, INC.; WECSYS, LLC; PELICAN SALES INC.; TONERQUEST INC.; RED HILL VENTURES LLC D/B/A RED HILL SUPPLY; 3-VETS, INC.; CAPRICE ELECTRONICS, INC.; CUNA SUPPLY LLC; I.S. ENTERPRISES, INC.; KPAUL PROPERTIES, LLC; PACIFIC INK, INC.; CAPP, INC; SOUTHERN CONSOLIDATED HOLDINGS, LLC D/B/A PATRIOT INK; JLWS ENTERPRISES, INC.; DBISP, LLC; LASER PLUS IMAGING, LLC; DISCOVER GROUP, INC.; VEE MODEL MANAGEMENT CONSULTING INC.; BAHFED CORP; ADVANCED DIGITAL SOLUTIONS INTERNATIONAL; BUSINESS EXPRESS, INC.; PHOTIKON CORPORATION; COMPONENT SOURCING GROUP; COMPUTECH INTERNATIONAL, INC.; FIRSTCALL OFFICE SOLUTIONS, INC.; FOCUS CAMERA LLC; A & T MARKETING INC. D/B/A A & T NETWORKS; | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | **FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** **DO NOT ENTER INTO PACER DO NOT ENTER IN CM/ECF DO NOT PLACE IN PRESS BOX** |

| | |
|---|---|
| **AMERICAN TONER AND SUPPLY,** | § |
| **INC.; L & B GROUP, LLC D/B/A** | § |
| **PRECISION IMAGING; ADORAMA** | § |
| **INC.; DILTEX, INC.; A&E OFFICE AND** | § |
| **INDUSTRIAL SUPPLY;** | § |
| **OLUFADEJI AMELE D/B/A STEC-** | § |
| **STEADFAST TECHNICS; QIANGLONG** | § |
| **FURNITURE CO., LTD F/K/A** | § |
| **ZHEJIANG QIANGLONG SEATING** | § |
| **CO. LTD.; CONCEPT FURNITURE** | § |
| **ANHUI CO. LTD.; GLOBAL** | § |
| **FURNITURE ZHEJIANG CO., LTD.;** | § |
| **WOK & PAN INDUSTRY INC.;** | § |
| **KEENSTON ENTERPRISES LTD.;** | § |
| **KING LONG METAL INDUSTRIAL** | § |
| | § |
| **Defendants.** | § |

## FALSE CLAIMS ACT COMPLAINT AND DEMAND FOR JURY TRIAL

## Table of Contents

| | | |
|---|---|---|
| I. | Introduction…………………………………………………………………………4-8 | |
| II. | Jurisdiction and Venue……………………………………………………………8-9 | |
| III. | Filing Under Seal……………………………………………………………………9 | |
| IV. | Parties……………….…………………………………………………………........9-48 | |
| | A. Relator………………….…………………………………………………9-10 | |
| | B. – D. Defendant Suppliers……………………………………………………...10-13 | |
| | E. – VV. Defendant Resellers…………………………………………………13-45 | |
| | WW. – BBB. Defendant Manufacturers…………………………………………45-48 | |
| V. | Relevant Law………………………………………………………………………48-56 | |
| | A. False Claims Act………………………………………………………………48-49 | |
| | B. Trade Agreement Act…………………………………………………………49-51 | |
| | C. GSA Contract Requirements and Certifications……………………………51-56 | |
| VI. | Company Wrongdoing………………………………………………………………56-87 | |
| | A. ECo and its resellers……………………………………………………………56-68 | |
| | B. SPR and its resellers…………………………………………………………..68-73 | |
| | C. Foreign manufacturers…………….……………………………………………73-79 | |
| | D. Fellowes, Inc. and its resellers…………………………………………………79-87 | |
| VII. | Period of Wrongdoing………………………………………………………………88 | |
| VIII. | Counts I – III………………………………………………………………………89-93 | |
| IX. | Conclusion And Prayer For Relief…………………………………………………93 | |
| X. | Demand for Jury Trial………………………………………………………………94 | |

## I. INTRODUCTION

1. This is an action against Defendants Essendant Co., S.P. Richards Company, Fellowes, Inc., Qianglong Furniture Co., Ltd F/K/A Zhejiang Qianglong Seating Co. Ltd., Concept Furniture Anhui Co. Ltd., Global Furniture Zhejiang Co., Ltd., Wok & Pan Industry Inc., Keenston Enterprises Ltd., King Long Metal Industrial, and forty-four (44) resellers (collectively, "Defendants") to recover damages and civil penalties arising from false and/or fraudulent claims and statements made, used, or caused to be made or used in violation of False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*.

2. As more fully alleged herein, this action arises out of the Defendants' continuing schemes to defraud the United States of America by knowingly advertising and selling or causing the sale of various products which were manufactured in mainland China to the United States Government ("Government") through the General Service Administration ("GSA"). GSA contracts are subject to the Trade Agreements Act ("TAA"), which requires that all products advertised and sold under the GSA contract be manufactured or "substantially transformed" in the United States or a TAA "designated country." China is not a TAA designated country. The Defendants falsely misrepresented the country of origin of the products advertised and sold on GSA *Advantage!*[1] in direct violation of the TAA and other relevant laws and regulations, as set forth herein.

3. The Defendants falsified the country of origin of office products to be able to sell them to the Government. Defendants Essendant Co., S.P Richards Company, and Fellowes, Inc. (collectively, "Defendant Suppliers"), forty-four (44) resellers (collectively, "Defendant

---

[1] The government website through which FSS Contractors advertise and sell their products and services to various federal agencies.

Resellers"), and six (6) foreign manufacturers (collectively, "Defendant Manufacturers") knowingly engaged in these fraudulent practices. Defendant Resellers must certify directly to the Government that all the products they advertise and sell under their GSA contracts are TAA compliant. *See* 48 C.F.R. 52.225-5(b). In addition, the contract Solicitation and the GSA contracts state that, upon request of the GSA Contracting Officers, Defendant Suppliers/Manufacturers must provide a Letter of Supply/Commitment to the Defendant Resellers guaranteeing, *inter alia*, that the products they provide to the resellers are TAA compliant. *See* contract clause I-FSS-644. In each and every contract of Defendant Resellers related herein, the contract required the TAA compliance certification. As such, the Defendant Suppliers/Manufacturers herein specifically knew that their products were being advertised and sold to the Government through the GSA triggering the requirement for TAA compliance as to countries of origin. In addition, Defendant Suppliers Essendant Co. and Fellowes, Inc. even "drop-shipped" their non-compliant brand products directly from their facilities to the navy warehouse in violation of the TAA. Drop-shipping allows resellers to have products delivered directly to their customers by the supplier/manufacturer without stocking or handling the products themselves in any way.

4. Specifically, Defendant Supplier Essendant Co. knowingly provided false country of origin information and supplied office furniture products that were made in China in violation of the TAA to Defendant Resellers Axiscore LLC and Replenish Ink, Inc. to sell to the Government under their respective GSA Federal Supply Schedule ("FSS") contracts. *See* ¶¶ 203-210 herein. In doing so, Defendant Essendant Co. caused and participated in the sale of non-TAA-compliant products to the Government. Defendant Essendant Co. also knowingly provided

false country of origin information for its products to the following Defendant Resellers to

advertise and sell to the Government under their respective GSA FSS contracts.

1) Acorn Office Products, LLC;
2) Federal Merchants Corp.;
3) Zee Technologies, Inc.;
4) SEVA Technical Services, Inc.;
5) Weber Computer Supply, Inc. D/B/A Ibuyofficesupply.com;
6) Mensch Mill & Lumber Corp.;
7) MJL Enterprises, LLC;
8) Source One MRO, Inc.;
9) New Century Technologies Inc.;
10) Hardware, Inc.;
11) WECsys, LLC;
12) Pelican Sales Inc.;
13) Tonerquest Inc.;
14) Red Hill Ventures LLC D/B/A Red Hill Supply;
15) 3-Vets, Inc.;
16) Caprice Electronics, Inc.;
17) Cuna Supply LLC;
18) I.S. Enterprises, Inc.;
19) KPaul Properties, LLC;
20) Pacific Ink, Inc.;
21) CAPP, Inc.;
22) Southern Consolidated Holdings, LLC D/B/A Patriot Ink

5.      Similarly, Defendant Supplier S.P. Richards Company knowingly provided false

country of origin information and supplied office furniture products that were made in China in

violation of the TAA to Defendant Reseller Laser Plus Imaging, LLC to sell to the Government

under its GSA FSS contract. *See* ¶¶ 219-222 herein. In doing so, Defendant S.P. Richards

Company caused and participated in the sale of non-TAA-compliant products to the

Government. Defendant Supplier S.P. Richards Company also knowingly provided false country

of origin information for its products to the following Defendant Resellers to advertise and sell to

the Government under their respective GSA FSS contracts.

1) Acorn Office Products, LLC;
2) Federal Merchants Corp.;
3) Weber Computer Supply, Inc. D/B/A Ibuyofficesupply.com;

4) Mensch Mill & Lumber Corp.;
5) KPaul Properties, LLC;
6) JLWS Enterprises, Inc.;
7) DBISP, LLC;
8) Discover Group, Inc.

6.     Import data shows that Defendant Manufacturers Qianglong Furniture Co., Ltd.

f/k/a Zhejiang Qianglong Seating Co. Ltd., Concept Furniture Anhui Co. Ltd., Global Furniture

Zhejiang Co., Ltd., Wok & Pan Industry Inc., Keenston Enterprises Ltd., and King Long Metal

Industrial have shipped many office products from mainland China to Defendant Suppliers

Essendant Co. and/or S.P. Richards Company over the years, dating back to at least 2013. In

addition, Defendant Manufacturers are listed as the manufacturers for different products of

Defendant Essendant Co. directly on GSA *Advantage!*, but the country of origin for these

products is not listed as China. Defendant Manufacturers make products for Defendant Suppliers

Essendant Co. and/or S.P. Richards in mainland China, which are then advertised and sold on

GSA *Advantage!* under a false country of origin.

7.     As set forth herein, Defendant Fellowes, Inc. knowingly provided false country of

origin information and supplied office products that were made in China in violation of the TAA

to Defendant Reseller Vee Model Consulting Inc. to sell to the Government under its GSA FSS

contract. *See* ¶¶ 242-247 herein. In doing so, Defendant Fellowes, Inc. caused and participated in

the sale of non-TAA-compliant products to the Government. Defendant Fellowes, Inc also

knowingly provided false country of origin information for its products to the following

Defendant Resellers to advertise and sell to the Government under their respective GSA FSS

contracts:

1) Axiscore LLC;
2) Federal Merchants Corp.;
3) Zee Technologies, Inc.;
4) KPaul Properties, LLC;

Page **7** of **94**

5) JLWS Enterprises, Inc.;
6) Bahfed Corp;
7) Advanced Digital Solutions International;
8) Business Express, Inc.;
9) Photikon Corporation;
10) Component Sourcing Group;
11) Computech International, Inc.;
12) Firstcall Office Solutions, Inc.;
13) Focus Camera LLC;
14) A & T Marketing Inc. (d/b/a A & T Networks);
15) American Toner And Supply, Inc.;
16) L & B Group, LLC d/b/a Precision Imaging;
17) Adorama Inc.;
18) Diltex, Inc.;
19) A&E Office And Industrial Supply;
20) Olufadeji Amele D/B/A STEC-Steadfast Technics

8.     Defendants' violations of the TAA were material to the Government's payment

decision because, had the Defendants been truthful about the country of origin, the GSA would

not have allowed the products to be advertised on GSA *Advantage!* and the Government would

not have paid for them. The May 2016 notice issued by the GSA to contract holders makes it

clear that any non-TAA-compliant products will be deleted from GSA *Advantage!* and may

result in the removal of the contractor's entire GSA *Advantage!* file. The letter specifically

states: "Failure to process required actions by the required date may result in the removal of your

entire GSAdvantage [sic] file…In the future, any products represented as having a country of

origin that is TAA compliant, but is later found to be manufactured in any non-TAA compliant

countries, or is represented a Made In America but determined not to be, could result in the

removal of you entire GSAdvantage [sic] file and/or subject your contract or cancellation per

Clause 552.238-73." *See* paragraph 191 herein.

## II.   JURISDICTION AND VENUE

9.     This action arises under the False Claims Act, 31 U.S.C. § 3729 *et seq*. This Court has jurisdiction over this case pursuant to 31 U.S.C. §§ 3732(a). This court also has jurisdiction pursuant to 28 U.S.C. § 1345 and 28 U.S.C. § 1331.

10.    At all material time frames set forth in this Complaint, Defendant Essendant Co. regularly conducted substantial business within the Commonwealth of Massachusetts and made and is making significant revenue within Massachusetts. Defendants are thus subject to personal jurisdiction in Massachusetts.

11.    Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) because, at all material time frames set forth in this Complaint, Defendant Essendant Co. conducted and conducts business throughout Massachusetts.

## III.   FILING UNDER SEAL

12.    Under this Act, this Complaint is to be filed in camera and remain under seal for a period of at least sixty (60) days and shall not be served on Defendants until the Court so orders.

13.    As required by the FCA, Relator voluntarily submitted prior to the filing of this Complaint a confidential pre-filing disclosure statement (subject to the attorney-client, work product and common-interest privileges) to the Government of the United States on or about December 31, 2018 containing materials, evidence, and information in his possession pertaining to the allegations contained in this Complaint.

## IV.   PARTIES

14.    The real party in interest as plaintiff is the United States of America through its agency the GSA.

### A. Relator Ryan Castillejos

15. Relator Ryan Castillejos ("Relator") is a United States citizen and a resident of the State of California. Since December 2014, he has been working as a Property Disposal Officer at the Naval Air Station North Island (NASNI) in San Diego, CA. His job duties include overseeing the warehouse and incoming shipments for the CNAP - COMHSMWINGPAC command.

16. Before this, the Relator worked as an Equipment Specialist for the U.S. Navy at Fleet Readiness Center South West (FRCSW) between August and December 2014; as an Inventory Management Specialist at Fleet Readiness Center Western Pacific (FRCWP) between April 2012 and August 2014; and as a Supply Technician for the Naval Air Station Atsugi, Japan from December 2009 to April 2012.

17. Between April 2001 and April 2006, Relator Castillejos was an active duty member of the Navy. He was an Aviation Storekeeper Petty Officer Second Class, AK2 / E5. He was honorably discharged on April 24, 2006.

18. Relator is an original source of the information underlying this Complaint. He has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the United States as required by the False Claims Act, 31 U.S.C. § 3730(b)(2). To the Relator's knowledge, the information underlying the allegations in this Complaint has not been publicly disclosed.

**B. Defendant Essendant Co.**

9. Defendant Essendant Co.[2] ("ECo") is an Illinois corporation with its principal place of business at 1 Parkway Blvd., Deerfield, IL 60015. ECo conducts business in Massachusetts and has distribution centers in Woburn and Mansfield.

---

[2] Formerly known as United Stationers Supply Co. ("USSCo")

10.     ECo is a wholly owned subsidiary and the principal operating company of Essendant Inc.,[3] a publicly traded, national distributor of workplace items. Alera® is Essendant Inc.'s office furniture line and a registered trademark of ECo. The company's other brand products include: Universal® office products; Boardwalk® janitorial, foodservice and breakroom products; Innovera® technology products; Windsoft® paper products; Anchor Brand® and Best Welds® welding, industrial, safety and oil field pipeline products; Finish Pro™; Painters Pride®; Quipall®; Nesco®; Performance 1®; Advanced Tool Design or "ATD"; and AIM.

11.     ECo offers "Wrap and Label" and "Drop-Ship" programs. "Wrap and Label" gives resellers the option to receive individually packaged orders to be delivered directly to their end consumers by ECo. The "Drop-Ship" program allows resellers to have products delivered by ECo directly to the resellers' customers without the resellers stocking or handling the products themselves in any way. The products in question in this case were drop-shipped from ECo's distribution center directly to the Navy, which means that ECo knew that it was delivering products that were made in China to the Government. ECo obviously knows where it drop-ships its products, including those at issue here.

12.     ECo provides approximately 170,000 items to approximately 29,000 reseller customers through a network of 70 distribution centers in the U.S., Canada, and Dubai. 64 of these distributions centers are located in the U.S.

13.     In 2017, the company's domestic operations generated approximately $4.9 billion of its $5 billion in consolidated net sales. $268.4 million derived from the sales of office furniture (5.3% of revenue) and $745.7 million derived from the sales of traditional office

---

[3] Formerly known as United Stationers Inc.

products (14.8% of revenue). The company's adjusted net income for 2017 and 2016 was $24.8 million and $57 million, respectively.

## C. Defendant S.P. Richards Company

14. Defendant S.P. Richards Company ("SPR") is a Georgia corporation with its principal place of business at 6300 Highlands Pkwy. SE, Smyrna, GA 30082.

15. SPR is a wholly owned subsidiary of Genuine Parts Company ("GPC"), a publicly traded company engaged in the distribution of business products, automotive replacement parts, industrial parts, and electrical parts. SPR operates the *Business Products Group*, which includes office furniture, technology products, general office products, school supplies, cleaning/janitorial/breakroom supplies, safety and security items, healthcare products, and disposable food service products. SPR's inventory includes products from 850 manufacturers worldwide as well as products from its nine proprietary brands. These brands include: Lorell®, a line of office furniture; Sparco™, an economical line of office supply basics; Compucessory®, a line of computer accessories; NatureSaver®, an offering of recycled products; Elite Image®, a line of new and remanufactured toner cartridges, premium papers and labels; Integra™, a line of writing instruments; Genuine Joe®, a line of cleaning and breakroom products; Business Source®, a line of basic office supplies available only to independent resellers; and Lighthouse, a brand of janitorial and cleaning products offered through the GCN business.

16. The *Business Products Group* distributes more than 98,000 items to over 9,700 resellers/distributors throughout the United States and Canada from a network of 55 distribution centers. 49 of these distribution centers are located in the United States.

17.     The *Business Products Group* produced \$2 billion in net sales in 2017. The

Business Products Group also had \$98.8 million in operating profit in 2017. GPC's net income

was \$617 million in 2017.

**D. Defendant Fellowes, Inc.**

18.     Defendant Fellowes, Inc. (also known as Fellowes Brands) is an Illinois

corporation with its principal place of business at 1789 Norwood Ave., Itasca, IL.

19.     Fellowes, Inc. is a worldwide wholesaler of office products and technology

accessories. Its brands include: Fellowes®, Banker's Box®, AeraMax® Air Purifiers, Fellowes

Mobile, and ESI Ergo.

20.     The Fellowes brand includes products such as shredders, laminators, binding

machines, cutters and trimmers, sit-stand solutions, office organization products, and computer

accessories.

21.     On its website, Fellowes, Inc. has a section dedicated to Government Approved -

TAA compliant products. However, the items purchased by the government on GSA *Advantage!*

that are at issue in this case are not among the TAA compliant products listed on the Fellowes,

Inc. website.

**E. Defendant Axiscore, LLC**

22.     Defendant Axiscore, LLC ("Axiscore") is organized under the laws of the State of

Maryland. Its principal place of business is at 9500 Arena Drive, Suite 440-D, Largo, MD.

23.     Axiscore is certified by the Small Business Administration ("SBA") as a Small

Disadvantaged Business ("SDB") and 8(a) Business. It is a reseller of office products/supplies,

office furniture, and technology products/accessories. Axiscore also provides portfolio

Case 1:19-cv-10100-PBS Document 1 Filed 01/16/19 Page 15 of 95

management and program support, process re-engineering and automation, and management and

infrastructure support. The company has distribution points in several major U.S. cities.

24.     Axiscore currently maintains the following two (2) GSA contracts:

| Contract Number | FSC Group | Title | Categories | Original Contract Period | Current End date |
|---|---|---|---|---|---|
| GS-02F-0191V | 75 | Office products/supplies and services and new products/technology | 75 200 (Office Products); 75 85 (Restroom Products) | 9/10/2009 - 9/9/2014 | 9/9/2019 |
| GS-35F-0354T | 70 | General purpose commercial information technology equipment, software, and services | 132-8 (Purchase of new equipment); 132-9 (Purchase of used or refurbished equipment); 700-50 (Order-level materials) | 3/27/2007 - 3/28/2012 | 3/28/2022 |

25.     Axiscore sells Alera products to the Government under contract number GS-02F-

0191V, which was renewed in 2014. This contract was subject to full and open competition[4] and

no set-asides[5] were used.

26.     In addition, Axiscore advertises products of Defendant Supplier Fellowes, Inc.

under both contracts. Contract number GS-35F-0354T was also to full and open competition and

no set-asides were used.

27.     On its website, Axiscore states that it is committed to remaining TAA compliant:

"Several countries that are major suppliers of goods or services to the U.S. market, such as China, India, Malaysia, Thailand, and Taiwan,[6] are not 'designated countries' within the definition of the TAA. Therefore, items that are considered end products of those countries are not eligible for being placed on GSA schedules unless no U.S.-made or designated country end products are available…Axiscore fully understands that TAA & Post Consumer Product Compliance are the responsibility of governement [sic] contractors. For this reason, we mandate that our distributors provide, as a reference, a Government Indicator file – which has

[4] *See* 48 CFR 6.000 et *al.*
[5] *See* 48 CFR 19.501 et *al.*
[6] Taiwan was added to the list of TAA designated countries in 2009.

Page **14** of **94**

pass-thru information on TAA (Country of Origin, etc....). and % Recyclable. Our distributors request this information from product manufacturers on a regular basis but do not and can not independently verify the information or content accuracy. Axiscore uses the information provided to filter its catalog for "undesignated country" products before offering them to GSA...In the event a product has multiple countries of origin, it is Axiscore's practice to filter out that product if one of the countries is listed as undesignated."[7]

## F. Defendant Replenish Ink, Inc.

28.     Defendant Replenish Ink, Inc. ("Replenish Ink") is a Florida corporation with its

principal place of business at 701 Brickell Key Blvd., PH-10, Miami, FL.

29.     Replenish Ink is a certified as a SDB reseller of office products. It currently

maintains the following GSA contract:

| Contract Number | FSC Group | Title | Categories | Original Contract Period | Current End Date |
|---|---|---|---|---|---|
| GS-02F-0143S | | Office products/supplies and services and new 75 products/technology | 75 200 (Office Products) | May 02, 2011 to May 1, 2016 | 1-May-21 |

30.     Replenish Ink sells Alera products to the Government under this contract.

Replenish Ink also advertises products of Fellowes, Inc. under this contract. This contract was subject to full and open competition and no set-asides were used.

## G. Defendant Acorn Office Products, LLC

31.     Defendant Acorn Office Products, LLC ("Acorn") is organized under the laws of

the State of New Jersey. Its principal place of business is at 706 State Rt. 15 S, Ste 201C, Lake

Hopatcong, NJ 07849.

32.     Acorn is a reseller of office products. It currently maintains the following GSA

contract:

---

[7] http://www.axiscoreonline.com/taa.html

| Contract Number | FSC Group | Title | Categories | Contract Period |
|---|---|---|---|---|
| | | Office products/supplies and services and new | 75 200 (Office Products); 75 85 75 85 (Restroom | 06/17/2013- |
| GS-02F-0109U | | 75 products/technology | Products) | 06/16/2023 |

33.     Acorn advertises Alera, Lorell, and Fellowes, Inc. products under this contract.

Defendant Manufacturers Zhejiang Qianglong Seating Co. Ltd., Concept Furniture Anhui Co.

Ltd., Global Furniture Zhejiang Co., Ltd., Wok & Pan Industry Inc., and Keenston Enterprises

Ltd. are listed as the manufacturers of different Alera products advertised by Acorn under this

contract.

34.     This contract was subject to full and open competition and no set-asides were

used.

35.     On November 26, 2018, Acorn was awarded a new contract by the GSA. Acorn

will advertise furniture on *GSA Advantage!* under contract number 47QSCA19D0006 (Schedule

71). Acorn does not list any products under this contract at the time of this writing. The

solicitation for this contract states that all proposed products must comply with the TAA and that

it is the responsibility of the offeror to determine TAA compliance.[8] However, this contract is

designated as a partial small business set-aside for certain products.[9]

---

[8] FedBizOpps.gov, Solicitation ID: 3QSA-JB-100001-B, Document No. 02 - Solicitation
[9] Product SINs: 71 202 Wall Units; 71 203 Loft Group; 711 4 Blueprint Filing Cabinets; 711 5 Card Files; 711 6 Form Files; 711 4 Blueprint Filing Cabinets; 711 12 System Type Tables and Accessories; 711 13 Acoustic Partitions, Demountable Walls, and Accessories; 711 14 Vertical Surface Attachment Panels and Accessories; 711 20 Display and Communication Boards, Wall Station, and Accessories; 711 20 Display and Communication Boards, Wall Station, and Accessories; 711 92 Remanufactured Furniture; 489 161 Special Access Control Container; 71 304 Lecterns; 71 305 Library Furniture; 71 306 Mail Sorting and Distribution Furniture; 71 308 Cafeteria and Food Service Furniture; 71 312 Hazardous Materials Storage; 71 317 Chair, Convalescent (designed for use by physically impaired patients); 71 321 Correctional Institution Furniture

## H. Defendant Federal Merchants Corp.

36.     Defendant Federal Merchants Corp. ("Federal Merchants") is an Indiana corporation with its principal place of business at 350 Canal Walk, Ste. B, Indianapolis, IN 46202.

37.     Federal Merchants is certified as a SDB and HUBZone reseller of office products, information technology ("IT") solutions, and furniture. It currently maintains the following five (5) GSA contracts:

| Contract Number | FSC Group | Title | Categories | Contract Period |
|---|---|---|---|---|
| | | Office products/supplies and services and new | 75 200 (Office Products); | 9/25/2018 - |
| 47QSEA18D0085 | 75 | products/technology | 75 85 (Restroom Products) 20 300 (Projectors & Electronic Whiteboards); 50 177 (Date and Time Stamps); 51 100 (Copiers); 51 101 2 (Consumable Supplies for Copiers, Computers Printers and Fax Machine); 51 208 (Maintenance Service | 9/24/2023 |
| | | The Office, Imaging And Document | Agreement For all Other Equipment Repair, replacement, and spare parts | 11/24/2017 - |
| 47QSMA18D08NE | 36 | Solution | for equipment other than copiers) | 11/23/2022 |
| | | Professional Audio/Video Telemetry/Tracking, Recording/Reprodu cing And Signal | 219 3 (Televisions); 58 1 9Recording and Reproducing Video and Audio Equipment, Including Spare & Repair Parts, and Accessories); 58 2 (Monitors and Monitors/Receivers, Including Spare | |
| 47QSMA18D08Q1 | 58 1 | Data Solutions | & Repair Parts, and Accessories) | until 5/3/2023 |
| | | Photographic Equipment - Cameras, Photographic Printers And Related Supplies & Services (Digital | 19 1 (Film, Paper, Chemical, Processing Equipment for Photographic and Radiographic Applications); 20 316 (Cameras and Accessories mm); | |
| 47QSEA18D000F | 67 | And Film-Based) | 20 320 (Photo Digital Technologies) | until 3/18/2023 |
| | | General Purpose Commercial Information Technology Equipment, Software, And | 132 8 (Purchase of New Equipment - | 4/23/2018 - |
| 47QTCA18D00AZ | 70 | Services | Subject to cooperative Purchasing) | 4/22/2023 |

38. Federal Merchants advertises Alera products to the Government under contract number 47QSEA18D0085. This contract was subject to full and open competition and no set-asides were used. Line 5 of this contract specifically states: "All products are TAA compliant ."

39. Federal Merchants also advertises Lorell and Fellowes, Inc. products to the Government under the following contracts: 47QTCA18D00AZ, 47QSEA18D000F, and

Page **18** of **94**

47QSMA18D08NE. All of these contracts were also subject to full and open competition and no set-asides were used.

**I. Defendant Zee Technologies, Inc.**

40. Defendant Zee Technologies, Inc. ("Zee Tech.") is a California corporation with its principal place of business at 1890 Rameriz Dr., Yuba City, CA 95993.

41. Zee Tech. is certified as a SDB and 8(a) Business. It is reseller of office supplies and computer technology products. It currently maintains the following two (2) GSA contracts:

| Contract Number | FSC Group | Title | Categories | Contract Period |
|---|---|---|---|---|
| GS-02F-0100U | 75 | Office products/supplies and services and new products/technology | 75 200 (Office Products) | 06/09/2008 – 06/08/2023 |
| GS-35F-0092Y | 70 | General Purpose Commercial Information Technology Equipment, Software, And Services | 132 8 (Purchase of New Equipment - Subject to cooperative Purchasing); 70 500 (Order-Level Materials (OLMs) - Subject to cooperative Purchasing) | 11/30/2011 - 11/29/2021 |

42. Zee Tech. advertises Alera and Fellowes, Inc. products under contract number GS-02F-0100U. This contract was subject to full and open competition and no set-asides were used.

43. In addition, Zee Tech. advertises products of Fellowes, Inc. under contract number GS-35F-0092Y. This contract was also subject to full and open competition and no set-asides were used.

**J. Defendant SEVA Technical Services, Inc.**

44. Defendant SEVA Technical Services, Inc. ("SEVA") is Virginia corporation with its principal place of business at 704 Thimble Shoals Blvd., Ste 300A, Newport News, VA 23606.

45.     SEVA is a Service-Disabled Veteran-Owned Small Business (SDVOSB). It is a

reseller of hardware products. It currently maintains the following two (2) GSA contracts:

| Contract Number | FSC Group | Title | Categories | Contract Period |
|---|---|---|---|---|
| GS-21F-089BA | 51 V | Hardware Superstore | 105 002 (Hardware Store, Home Improvement Center, or MRO - Catalog) | 6/1/2014 – 5/31/2019 |
| GS-07F-0100W | 84 | Total Solutions For Law Enforcement, Security, Facilities Management, Fire, Rescue, Clothing, Marine Craft And Emergency/Disaster Response | 246 20 2; 246 20 3; 246 25; 246 36;  246 43; 426 1A; 426 1B; 426 1C; 426 4C; 426 4E; 426 4G; 426 4S;  426 99; 465 10; 465 11; 465 19; 465 22; 465 9; 567 15; 567 99; 633 1; 633 15; 633 18; 633 22; 633 26; 633 27; 633 4; 633 45; 633 6; 633 61; 633 70; 633 99; 84 500 | 12/1 2009 – 11/30/2019 |

46.     SEVA advertises Alera and Fellowes, Inc. products under contract number GS-

21F-089BA (Schedule 51 V). This contract was subject to full and open competition and no set-

asides were used.

47.     In addition, SEVA advertises products of Fellowes, Inc. under contract number

GS-07F-0100W (Schedule 84). This contract was also subject to full and open competition and

no set-asides were used.

## K. Defendant Weber Computer Supply, Inc. D/B/A Ibuyofficesupply.com

48.     Defendant Weber Computer Supply, Inc. D/B/A Ibuyofficesupply.com

("Ibuyofficesupply") is a Minnesota corporation with its principal place of business at 14940 28th

Ave. N, Plymouth, MN 55447.

49.     Ibuyofficesupply is certified as a Woman Owned Small Business (WOSB) and is

a reseller of office products. Ibuyofficesupply currently holds the following GSA contract:

| Contract Number | FSC Group | Title | Categories | Contract Period |
|---|---|---|---|---|
| GS-02F-0221W | 75 | Office products/supplies and services and new products/technology | 75 200 (Office Products); 75 85 (Restroom Products) | 08/19/2010 - 08/18/2020 |

50. Ibuyofficesupply advertises Alera, Lorell, and Fellowes, Inc. products to the Government under this contract. Line 5 of the contract lists the points of production and Line 10 lists the country of origin of all foreign products sold under this contract. China is not listed among these countries. This contract was subject to full and open competition and no set-asides were used.

**L. Defendant Mensch Mill & Lumber Corp.**

51. Defendant Mensch Mill & Lumber Corp. ("Mensch") is a New York corporation with its principal place of business at 1261 Commerce Ave., Bronx, NY 10462.

52. Mensch is a reseller of building materials, hardware, and office furniture. It currently holds the following two (2) GSA contracts:

| Contract Number | FSC Group | Title | Categories | Contract Period |
|---|---|---|---|---|
| 47QSEA19D000Q | 75 | Office products/supplies and services and new products/technology | 75 200 (Office Products) 105 001 (Hardware Store, Home Improvement Center, or MRO - Store Front); 105 002 (Hardware Store, Home Improvement Center, | until 10/22/2023 |
| GS-21F-0044W | 51 V | Hardware superstore | or MRO - Catalog) | 12/16/2014 - 12/15/2019 |

53. Mensch advertises Alera, Lorell, and Fellowes, Inc. products under contract number GS-21F-0044W. This contract was subject to full and open competition and no set-asides were used.

54. In addition, Mensch advertises products of Fellowes, Inc. under contract number 47QSEA19D000Q. This contract was also subject to full and open competition and no set-asides were used.

## M. Defendant MJL Enterprises, LLC

55. Defendant MJL Enterprises, LLC ("MJL") is organized under the laws of the Commonwealth of Virginia. Its principal place of business is at 2748 Sonic Dr., Virginia Beach, VA 23453.

56. MJL is certified as a SDVOSB. It is a reseller of maintenance/repair/operating ("MRO") supplies, office supplies, medical supplies, and tactical supplies. It currently maintains the following three (3) GSA contracts:

| Contract Number | FSC Group | Title | Categories | Contract Period |
|---|---|---|---|---|
| GS-21F-0020U | 51 V | Hardware Superstore | 105 002 (Hardware Store, Home Improvement Center, or MRO - Catalog ); 105 003 (HARDWARE STORE, HOME IMPROVEMENT CENTER, OR MRO - SERVICES) | 12/1/17-11/30/22 |
| GS-07F-036DA | 84 | Total Solutions for Law Enforcement, Security, Facilities Management, Fire, Rescue, Clothing, Marine Craft and Emergency/Disaster Response Federal Strategic Sourcing Initiative (FSSI) - Office Supplies (OS3) | 246 42 1(Facility Management Systems); 260 10 (Marine Craft Electronics Bridge and/or Other Marine-specific Electronic Equipment and Marine Craft Safety Equipment (other than Personal Flotation Devices)); 426 1A (Miscellaneous Personal Equipment); 426 1B (Body Armor - (including canine body armor) and related services) ; 426 1C (Helmets ); 426 4 C (Night Vision Equipment); 426 4F (Emergency Preparedness and First Responder Equipment, Training and Services); 426 4G (Firearms Storage, Securing and Cleaning Equipment; Unloading Stations; Bullet Recovery Systems and Gun Racks) ; 426 6 (Law Enforcement and Security Training) ; 465 10 (Emergency Patient Transportation and Immobilization Devices); 465 19 (Firefighting and Rescue Tools, Equipment and Accessories) ; 465 9 (Medical/Rescue Kits) ; 633 40 (Flotation Devices); 633 61 (Special Purpose Clothing not elsewhere covered under this solicitation) ; 84 500 (Order-Level Materials (OLMs) - SUBJECT TO COOPERATIVE PURCHASING) | 11/27/15-11/26/20 |
| GS02Q14DCR0015 | OS3 | | CLIN 0001 (General Office Supplies ) | 8/8/18-8/7/19 |

57. MJL advertises Alera products under contract number GS-21F-0020U (Schedule

51 V). Line 10 of this contract states: "All items under Contract GS-21F-0020U are Trade

Agreement Act (TAA) compliant." This contract was subject to full and open competition and no

set-asides were used.

58. In addition, MJL advertises Fellowes, Inc. products under contract number

GS02Q14DCR0015 (Schedule OS3). This contract was subject to full and open competition and

no set asides were used.

## N. Defendant Source One MRO, Inc.

59. Defendant Source One MRO, Inc. ("Source One") is a California corporation with

its principal place of business at 1040 Seahorse Ct., Carlsbad, CA 92011.

60. Source One is certified as a WOSB. It is a reseller of maintenance/industrial

supplies, and tools and equipment. It currently maintains the following two (2) GSA contracts:

| Contract Number | FSC Group | Title | Categories | Original Contract Period | Current End Date |
|---|---|---|---|---|---|
| GS-21F-0070X 51 V | | Hardware Superstore Total Solutions for Law Enforcement, Security, Facilities Management, Fire, Rescue, Clothing, Marine Craft and Emeregency/Disaster | 105 002 (Hardware Store, Home Improvement Center, or MRO - Catalog); 426 1A (Miscellaneous Personal Equipment ); 426 1C (Helmets); 426 99 (Introduction of New Services/Products related to Law Enforcement and Security Equipment) | 2/1/11-1/31/16 | 1/31/2021 |
| | | | 426 1A (Miscellaneous Personal Equipment) ; 426 1C (Helmets ); 426 99 (Introduction of New Services/Products related to Law Enforcement and | | |
| 47QSWA18D0(84 | | Response | Security Equipment) | 12/11/17-12/10/22 | |

Page **23** of **94**

61. Source One advertises Alera products under contract number GS-21F-0070X

(Schedule 51 V). This contract was subject to full and open competition and no set-asides were
used.

62. Source One has thirteen distribution centers across the country.

## O. Defendant New Century Technologies Inc.

63. Defendant New Century Technologies Inc. ("New Century Tech") is a California

corporation with its principal place of business at 4290 Kendall St., San Diego, CA 92109.

64. New Century Tech is a SBA 8(a), SDB, and WOSB certified firm. It is a reseller

of office products, toner cartridges, industrial products, and IT services. It currently maintains

the following three (3) GSA contracts:

| Contract Number | FSC Group | Title | Categories | Original Contract Period | Current End Date |
|---|---|---|---|---|---|
| GS-02F-0124U | 75 | Office Products/ Supplies and Services and New Products/ Technology | 75 200 (OFFICE PRODUCTS); 75 85 (Restroom Products) | 7/17/08-7/16/23 | |
| GS-21F-0088X | 51 V | Hardware Superstore | 105 002 (Hardware Store, Home Improvement Center, or MRO - Catalog) | 3/15/11-3/14/16 | 3/14/2021 |
| GS-35F-0318V | 70 | General Purpose Commercial Information Technology Equipment, Software, and Services | 132 12; 132 32; 132 33; 132 34; 132 8; 70 500 | 3/20/09-3/19/19 | |

65. New Century Tech advertises Alera, Lorell, and Fellowes, Inc. products under

contract GS-02F-0124U. New Century Tech also advertises Alera products under contract GS-
21F-0088X (Schedule 51 V). Both contracts were subject to full and open competition and no
set-asides were used in awarding either contract.

## P. Defendant Hardware, Inc.

66. Defendant Hardware, Inc. ("Hardware") is a Louisiana corporation with its

principal place of business at 1500 Franklin Ave., Gretna, LA 70053.

67. Hardware is a WOSB and HUBZone certified business. It is a reseller of

commercial and industrial maintenance and repair operations supplies. It currently maintains the

following GSA contract:

| Contract Number | FSC Group | Title | Categories | Contract Period |
|---|---|---|---|---|
| GS-21F-0104W | 51 V | Hardware Superstore | 105 001 (Hardware Store, Home Improvement Center, or MRO - Store Front); 105 002 (Hardware Store, Home Improvement Center, or MRO - Catalog); 105 003 (HARDWARE STORE, HOME IMPROVEMENT CENTER, OR MRO - SERVICES) | 3/1/15-2/29/20 |

68. Hardware advertises Alera products under this contract. Also, this contract was

subject to full and open competition and no set-asides were used.

## Q. Defendant WECsys, LLC

69. Defendant WECsys, LLC ("WECsys") is organized under the laws of the state of

Minnesota. Its principal place of business is at 8825 Xylon Ave. N., Brooklyn Park, MN 55445.

70. WECsys is certified as SDB. It is a reseller of office supplies, office furniture,

and hospitality supplies and services. It currently maintains the following GSA contracts:

| Contract Number | FSC Group | Title | Categories | Contract Period |
|---|---|---|---|---|
| GS-06F-0049S | 51 V | Hardware Superstore | 105 002 (Hardware Store, Home Improvement Center, or MRO - Catalog) | 4/3/06-4/2/21 |
| GS-29F-0019R | 71 | Furniture | 71 500; 711 1; 711 11; 711 12; 711 13; 711 16; 711 17; 711 18; 711 19; 711 2; 711 20; 711 3<br>711 4; 711 5; 711 6; 711 7<br>711 8; 711 9; 711 93; 711 94<br>711 95 | 5/3/15-5/2/20 |
| GS-07F-5826R | 73 | Food service, hospitality, cleaning equipment and supplies, chemicals and services | 375 100; 375 103<br>375 107; 375 117<br>375 125; 375 129<br>375 135; 375 200<br>375 321; 375 323<br>375 341; 375 363<br>375 364; 375 371<br>375 372 | 3/15/06-4/2/16 |
| GS-14F-0039L | 75 | Office Products/ Supplies and Services and New Products/ Technology Total Solutions for Law Enforcement, Security, Facilities Management, Fire, Rescue, Clothing, Marine Craft and Emergency/Disaster Response | 75 200 (Office Products) | 4/16/16-4/15/21 |
| GS-07F-260BA | 84 | | 426 4E; 426 99<br>465 11; 465 9;  84 500 | 8/1/14-7/31/19 |
| GS-07F-BA398 | BPA | MAS Blanket Purchase Agreements (BPAs) | JANSAN CAT 1 (Cleaning Compounds and Related Dispensers); JANSAN CAT 2 (Non-motorized Cleaning Equipment and Trash Receptacles); JANSAN CAT 4 (Motorized Floor Cleaning Equipment and Accessories) | 7/16/2019 |

71.     WECsys advertises Alera, Lorell, and Fellowes, Inc. products under the following contracts: GS-14F-0039L; GS-29F-0019R; GS-06F-0049S. These contracts were subject to full and open competition and no set-asides were used in awarding the contracts.

72.     Exhibit 12 shows sales of Lorell and Fellowes, Inc. products by WECsys to the Government.

## R. Defendant Pelican Sales, Inc.

73.     Defendant Pelican Sales, Inc. ("Pelican Sales") is a Florida corporation with its

principal place of business at 2825 Business Center Blvd., Suite C9, Melbourne, FL 32940.

74.     Pelican Sales is SBA 8(a) business, SDB, and WOSB certified firm. It is a reseller

of furniture, hardware, and safety/security supplies. It currently maintains the following three (3)

GSA contracts:

| Contract Number | FSC Group Title | | Categories | Contract Period |
|---|---|---|---|---|
| | | | 105 002 (Hardware Store, Home | |
| GS-21F-0033V | 51 V | Hardware Superstore | Improvement Center, or MRO - Catalog) | 2/2/09-2/1/19 |
| | | | 71 312 (Hazardous Materials Storage); 71 | |
| GS-27F-0015U | 71 | Furniture | 500 (Order-Level Materials (OLMs)) | 3/26/08-3/25/23 |
| | | | | |
| | | | 246 20 2; 246 23; 246 36; 246 42 1; 246 43; | |
| | | | 426 1A; 426 1B; 426 1C; 426 1D; 426 3A; | |
| | | | 426 4C; 426 2E; 426 4G; 426 4J; 426 4K; | |
| | | | 426 4L; 426 4M; 426 4N; 426 4S; 426 99; | |
| | | | 465 10; 465 11; 465 19; 465 22; 465 9; 567 | |
| | | | 8; 567 99; 633 1; 633 1000; 633 15; 633 16; | |
| | | | 633 18; 633 19; | |
| | | | 633 22; 633 23; 633 25; 633 26; | |
| | | Total Solutions for Law Enforcement, | 633 27; 633 35; 633 4; 633 45; | |
| | | Security, Facilities Management, Fire, | 633 47; 633 48; 633 51;633 52; | |
| | | Rescue, Clothing, Marine Craft and | 633 6; 633 60; 633 6A; 633 99; | |
| GS-07F-9557S | 84 | Emergency/Disaster Response | 84 500 | 6/27/11-6/27/21 |

75.     Pelican Sales advertises Alera products under contract number GS-21F-0033V.

This contract was subject to full and open competition and no set-asides were used.

## S. Defendant Tonerquest Inc.

76.     Defendant Tonerquest Inc. ("Tonerquest") is a New York corporation with its

principal place of business at 241 37th St., Suite 302, Brooklyn, NY 11232.

77.     Tonerquest is a WOSB and HUBZone certified firm. It is a resellers of office and

professional supplies. It currently maintains the following GSA two (2) contracts:

| Contract Number | FSC Group | Title | Categories | Contract Period |
|---|---|---|---|---|
| | | | 105 002 (Hardware Store, Home | |
| | | Hardware | Improvement Center, or | |
| GS-21F-117BA | 51 V | Superstore | MRO - Catalog) | 7/23/14-7/22/19 |
| | | Office Products/ Supplies and Services and New | | |
| | | Products/ | 75 200 (OFFICE | |
| GS-02F-0132X | 75 | Technology | PRODUCTS) | 4/13/16-4/13/21 |

78. Tonerquest advertises Alera products under both contracts. Also, both contracts were subject to full and open competition and no set-asides were used.

79. In addition, Tonerquest advertises products of Fellowes, Inc. under contract number GS-02F-0132X.

## T. Defendant Red Hill Ventures LLC D/B/A Red Hill Supply

80. Defendant Red Hill Ventures LLC D/B/A Red Hill Supply ("Red Hill") is organized under the laws of the State of Texas. Its principal place of business is at 1710 W. Sam Houston Pkwy. N., Houston, TX.

81. Red Hill is a reseller of hardware supplies. It currently maintains the following GSA contract:

| Contract Number | FSC Group | Title | Categories | Original Contract Period |
|---|---|---|---|---|
| | | | 105 002 (Hardware Store, | |
| | | Hardware | Home Improvement Center, or | |
| GS-21F-0067U | 51 V | Superstore | MRO - Catalog) | 5/18/18-5/18/23 |

82. Red Hill advertises Alera, Lorell, and Fellowes, Inc. products under this contract. Line 10 of this contract states: "Red Hill Supply offers many foreign items that are all TAA compliant, see the Red Hill Supply GSA Advantage product list for details." Also, this contract was subject to full and open competition and no set-asides were used.

## U. Defendant 3-Vets, Inc.

83.    Defendant 3-Vets, Inc. ("3-Vets") is a Florida corporation with its principal place

of business at 1907 E. Hillsborough Ave., Suite 101, Tampa, FL 33610.

84.    3-Vets is certified as a SBA 8(a) business, SDB, HUBZone business, and

SDVOSB. It is a reseller of office products. It currently maintains the following GSA contract:

| Contract Number | FSC Group | Title | Categories | Contract Period |
|---|---|---|---|---|
| GS-02F-0128P | 75 | Office Products/ Supplies and Services and New Products/ Technology | 75 200 (Office Products) | 7/1/07-6/30/12 |

85.    It advertises Alera and Fellowes, Inc. products under this contract. Also, this

contract was subject to full and open competition and no set-asides were used.

## V. Defendant Caprice Electronics, Inc.

86.    Defendant Caprice Electronics, Inc. ("Caprice") is a New York corporation with

its principal place of business at 63 Flushing Ave., Unit 100, Brooklyn, NY.

87.    Caprice is certified as a WOSB. It is a reseller of office supplies, IT, medical

supplies, and hardware. It currently maintains the following five (5) GSA contracts:

| Contract Number | FSC Group | Title | Categories | Original Contract Period |
|---|---|---|---|---|
| GS-21F-0083Y | 51 V | Hardware Superstore | 105 002 (Hardware Store, Home Improvement Center, or MRO - Catalog) | 4/1/12- 3/31/22 |
| GS-35F-0478W | 70 | General Purpose Commercial Information Technology Equiptment, Software, and Services | 132 12 (Maintenance of Equipment, Repair Services and/or Repair/Spare Parts); 132 8 (Purchase of New Equipment); 70 500 (Order-Level Materials (OLMs)) | 6/7/10-6/6/20 |
| GS-02F-0023X | 75 | Office Products/ Supplies and Services and New Products/ Technology | 75 200( OFFICE PRODUCTS); 75 85 (Restroom Products) | 11/8/10-11/7/20 |
| GS-02F-0198W | 81 1B | Shipping, Packaging, and Packing Supplies | 617 1; 617 12; 617 2; 617 3; 617 4; 617 5; 617 7 | 10/23/18-7/12/20 |
| GS-07F-227CA | 84 | Total Solutions for Law Enforcement, Security, Facilities Management, Fire, Rescue, Clothing, Marine Craft and Emeregency/Disaster Response | 426 1A; 426 1B; 426 1C;     426 1D; 426 3A; 426 4C; 426 4F; 426 4G; 426 4J; 426 4L; 426 4M; 426 4N; 426 4S; 465 9; 633 1; 633 15; 633 16; 633 22; 633 23; 633 25; 633 27; 633 30; 633 38; 633 39; 633 48; 633 50; 633 51; 633 6; 633 60; 633 61; 633 70; 84 500 | 9/10/ 15-9/9/20 |

88.     Caprice advertises Alera, Lorell, and Fellowes, Inc. products under the following

contracts: GS-02F-0023X and GS-21F-0083Y (Schedule 51 V). Both contracts were subject to

full and open competition and no set-asides were used.

## W. Defendant Cuna Supply LLC

89.     Defendant Cuna Supply LLC ("Cuna Supply") is organized under the laws of the

State of Texas. Its principal place of business is at 5455 Dashwood St., STE. 600, Bellaire, TX.

90.     Cuna Supply is a SDVOSB. It is a reseller of industrial supplies, medical supplies,

food service, information technology, and telecom equipment, hardware, and supplies. It

currently maintains the following two (2) GSA contracts:

| Contract Number | FSC Group | Title | Categories | Original Contract Current End | |
|---|---|---|---|---|---|
| | | | | Period | Date |
| GS-06F-0006T | 51 V | Hardware Superstore | 105 002( Hardware Store, Home Improvement Center, or MRO - Catalog); 105 003 (HARDWARE STORE, HOME IMPROVEMENT CENTER, OR MRO - SERVICES ) | 10/26/16-10/25/21 | |
| V797D-30303 | 65 II A | Medical Equipement and Supplies | A-32, A-64, A-69, A-79, A-81, A-83, A-84, A-85, A-87 | 10/14/13 - 10/14/18 | 1/31/2019 |

91.    Cuna Supply advertises Alera products under contract number GS-06F-0006T

(Schedule 51 V). This contract was subject to full and open competition and no set-asides were

used.

92.    On its website, Cuna Supply states: "Cuna Supply LLC distributes and resells

TAA compliant industrial, medical, food service, information technology, and telecom

equipment, hardware, and supplies… Under our GSA Schedule 51 V (Hardware) Contract, Cuna

Supply offers thousands of TAA compliant products on GSA Advantage!®. We also provide

services related to hardware such as outsourcing, product find, product research, and special

order fulfillment." [10]

## X. Defendant I.S. Enterprises, Inc.

93.    Defendant I.S. Enterprises, Inc. ("IS Enterprises") is a District of Columbia

corporation. Its principal place of business is at 1324 H. St. NE, Washington, DC.

94.    IS Enterprises is certified as a SDB. It is a reseller of general contracting supplies.

It currently maintains the following GSA contract:

---

[10] https://cunasupply.com/

| Contract Number | FSC Group | Title | Categories | Contract Period |
|---|---|---|---|---|
| GS-21F-0010T | 51 V | Hardware Superstore | 105 002 (Hardware Store, Home Improvement Center, or MRO - Catalog); | 05/31/2017 - 05/30/2022 |

95. IS Enterprises advertises Alera and Fellowes, Inc. products under this contract. Line 5 of the contract lists the various points of production as: USA, Australia, Canada, Chile, Denmark, Dominican Republic, Germany, Great Britain, Hong Kong, Hungary, Italy, Korea (South), Mexico, Switzerland, and United Kingdom. Notably, China is not on the list. This contract was subject to full and open competition and no set-asides were used.

## Y. Defendant KPaul Properties, LLC

96. Defendant KPaul Properties, LLC ("KPaul") is organized under the laws of the State of Indiana and its principal place of business is located at 5616 West 74th Street, Indianapolis, IN, 46278.

97. KPaul is certified as a SDVOSB reseller of office products and technology solutions. It currently maintains the following five (5) GSA contracts:

| Contract Number | FSC Group | Title | Categories | Contract Period | Current End Date |
|---|---|---|---|---|---|
| GS-21F-0095U | 51 V | Hardware Superstore | 105 002 (Hardware Store, Home Improvement Center, or MRO - Catalog) | 7/28/2008 - 7/27/2018 | 7/27/2023 |
| GS-30F-029BA | 23 V | Automotive Superstore | 025 101 (Miscellaneous Vehicle Accessories); 271 108 (Spare Components and Equipment for Sedans, Light, Buses, Medium and Heavy Duty Trucks) | 5/27/2014 - 5/26/2019 | |
| V797P-4168B | 65 II A | MEDICAL EQUIPMENT AND SUPPLIES | A-13A (Sterile Latex Gloves); A-31 (Drapes, Surgical); A-3A (Plain Bandages/Gauzes); A-50H (Other Physiological Monitors) | 1/16/2009 - 1/31/2019 | |
| GS-35F-126CA | | GENERAL PURPOSE COMMERCIAL INFORMATION TECHNOLOGY EQUIPMENT, SOFTWARE, AND 70 SERVICES | 132 12 (Maintenance of Equipment, Repair Services and/or Repair/Spare Parts - Subject to cooperative purchasing); 132 4 (Daily/Short Term Rental - Subject to cooperative purchasing) 132 8 (Purchase of New Equipment - Subject to cooperative purchasing) | 12/23/2014 - 12/22/2019 | |
| GS-02F-0204X | | 76 PUBLICATION MEDIA 760 1 (Books and Pamphlets) | | until 7/12/2021 | |

98.     KPaul advertises Alera, Lorell, and Fellowes, Inc. products under contract number GS-21F-0095U (Schedule 51 V). This contract was subject to full and open competition and no set-asides were used.

99.     In addition, KPaul advertises products of Fellowes, Inc. under contract number GS-35F-126CA (Schedule 70). This contract was also subject to full and open competition and no set-asides were used.

## Z. Defendant Pacific Ink, Inc.

100.    Defendant Pacific Ink, Inc. ("Pacific Ink") is a California corporation with its principal place of business at 16870 West Bernardo Dr., Suite 440, San Diego, CA.

Page **33** of **94**

101.    Pacific Ink is certified as WOSB. It is a reseller of office supplies, janitorial

supplies, industrial supplies, and power tools. It currently maintains the following GSA

contracts:

| Contract Number | FSC Group | Title | Categories | Contract Period |
|---|---|---|---|---|
| GS-02F-0073P | 75 | Office Products/ Supplies and Services and New Products/ Technology | 75 200 (Office Products); 75 85 (Restroom Products) | 01/23/2004 - 01/22-2019 |
| 47QSHA18D002H | 51 V | Hardware Superstore | 105 002 (Hardware Store, Home Improvement Center, or MRO - Catalog) | 09/01/2018 - 08/31/2023 |
| GS02Q14DCR0005 | OS3 | Federal Strategic Office Initiative- office Supplies | CLIN 0001 (General Office Supplies) | 12/10/2014 – 12/09/2018 |

102.    Pacific Ink advertises Alera products under all three contracts. Also, all three

contract were subject to full and open competition and no set-asides were used. Line 10 of

contract number GS-02F-0073P states: "Pacific Ink, Inc. only offers items that are made in TAA

compliant countries." Line 7 of contract number GS02Q14DCR0005 states: "All items are TAA

compliant, AbilityOne Compliant, EPA-CP Compliant (if applicable)."

103.    In addition, Pacific Ink also advertises products of Fellowes, Inc. under the

following contracts: GS-02F-0073P (Schedule 75) and 4 GS02Q14DCR0005 (Schedule OS3).

## AA. Defendant CAPP, Inc.

104.    Defendant CAPP, Inc. ("CAPP") is a Pennsylvania corporation with its principal

place of business at 201 Marple Ave., Clifton Heights, PA. Its fictitious name is "cappusa.com".

105. CAPP is a reseller of process instrumentation, burner and flame safeguard controls, heating/ventilating/air conditioning controls, etc. It currently advertises Alera and Fellowes, Inc. products under contract number GS-21F-0116X (Schedule 51 V). This contract was subject to full and open competition and no set-asides were used.

106. CAPP also advertises Lorell and Fellowes, Inc. products under contract number GS-02F-0087W (Schedule 75). This contract was also subject to full and open competition and no set-asides were used.

## BB. Defendant Southern Consolidated Holdings, LLC D/B/A Patriot Ink

107. Defendant Southern Consolidated Holdings, LLC D/B/A Patriot Ink has its principal place of business at 7900 Union Ave., Suite 1100, Denver, CO. Documents from the Secretary of State's office show that the company was organized under the laws of the state of Colorado, but dissolved on September 6, 2011. However, Patriot Ink still maintains the following GSA contract:

| Contract Number | FSC Group | Title | Categories | Contract Period |
|---|---|---|---|---|
| GS-02F-0062V | 75 | Office products/supplies and services and new products/technology | 75 200 (Office Products) | 1/22/2009 - 1/21/2019 |

108. Patriot Ink is certified as SDVOSB. It advertises Alera and Fellowes, Inc. products under this contract. Also, this contract was subject to full and open competition and no set-asides were used.

## CC. Defendant JLWS Enterprises, Inc.

109. Defendant JLWS Enterprises, Inc. ("JLWS") is a Virginia corporation with its principal place of business at 1022 W 24TH St., Norfolk, VA 23517.

110. JLWS is certified as a SDB, SDVOSB, and HUBZone business. It is a reseller of

MRO supplies and office supplies. It currently maintains the following GSA contract:

| Contract Number | FSC Group | Title | Categories | Contract Period |
|---|---|---|---|---|
| GS-02F-0118T | 75 | Office products/supplies and services and new products/technology | 75 200 (Office Products); 75 85 (Restroom Products) | 06/21/2017 - 06/20/2022 |

111. JLWS advertises Lorell and Fellowes, Inc. products under this contract. Also, this

contract was subject to full and open competition and no set-asides were used.

## DD. Defendant DBISP, LLC

112. Defendant DBISP, LLC ("DBISP") is organized under the laws of the State of

Indiana. Its principal place of business is at 5847 W. 74th St., Indianapolis, Indiana 46278.

113. DBISP is certified as a SBA(8)(a) Business and SDB. It provides office products,

IT solutions, and industrial and medical supplies. It currently maintains the following five (5)

GSA contracts:

| Contract Number | FSC Group | Title | Categories | Contract Period |
|---|---|---|---|---|
| GS-02F-035DA 81 I B | | Shipping, Packaging, and packing supplies | 617 1 (Bags and sacks); 617 12 (Pallets, Plastic and Wood Airfeight); 617 3 (Wrapping and strapping materials); 617 4 (Packaging and packing bulk materials); 617 7 (Aluminum Foil Extra & heavy duty...) | 8/16/2016 - 8/15/2021 |
| GS-03F-104DA 36 | | The Office, Imaging, and Document Solutions | 50 156 (Personal & Document Identification Systems); 51 409 (Network, Optical Imaging Systems and Solutions) | 05/19/2016 - 05/18/2021 |
| GS-03F-056DA 58 I | | Professional Audio/Video, Telemetry Tracking, Recording/Reproducing and Signal data Solutions | 219 3; 219 4; 219 9; 58 1; 58 2; 58 6; 58 7 | 02/15/2016 - 02/14/2021 |
| GS-02F-014GA 67 | | Photographic Equipment | 20 316 (Cameras and Accessories mm); 67 99 (New Products/Technology) | 12/17/2016 - 12/16/2021 |
| GS-35F-133AA 70 | | General Purpose Commercial Information Technology Equipment, Software, and Services | 132 12 (Maintenance of Equipment, Repair Services and/or Repair/Spare Parts); 132 8 (Purchase of New Equipment); 70 500 (Order-Level Materials (OLMs)) | 12/21/2012 - 12/20/2022 |

114.     DBISP advertises Lorell products under contract number GS-03F-056DA. This
contract was subject to full and open competition and no set-asides were used.

## EE. Defendant Laser Plus Imaging, LLC

115.     Defendant Laser Plus Imaging, LLC ("Laser Plus Imaging") is a Nevada
corporation with its principal place of business at 6739 Variel Ave., Canoga Park, CA.

116.     Laser Plus Imaging is certified as a Woman Owned Small Business (WOSB). It is
a reseller of office products and currently maintains the following GSA contract:

| Contract<br>Number | FSC Group | Title | Categories | Original<br>Contract Period | Current End<br>Date |
|---|---|---|---|---|---|
| | | Office Products/<br>Supplies and<br>Services and | | | |
| GS-02F-0026W | 75 | New Products/<br>Technology | 75 200 (Office<br>Products) | 10/15/2009 -<br>10/14/2014 | 14-Oct-19 |

117.    Until on or about July 2018, Laser Plus Imaging sold Lorell products under this

contract. It also currently advertises Fellowes, Inc. products under this contract. This contract

was subject to full and open competition and no set-asides were used.

## FF. Defendant Discover Group, Inc.

118.    Defendant Discover Group, Inc. ("Discover Group") is a New York corporation

with its principal place of business at 2741 W 23rd St. Brooklyn, NY 11224.

119.    Discover Group is a reseller of office products, computer products, and electronic

goods. It currently maintains the following GSA contract:

| Contract Number | FSC Group | Title | Categories | Contract Period |
|---|---|---|---|---|
| | | Office<br>products/supplies<br>and services and | | |
| GS-02F-0124T | 75 | new<br>products/technology | 75 200 (Office<br>Products); | 9/9/2006 -<br>7/8/2022 |

120.    Sometime between September 9, 2018 and October 23, 2018, Discover Group's

catalogue became unavailable on GSA *Advantage!*. However, Discover Group advertised and/or

continues to advertise Alera, Lorell, and Fellowes, Inc. products on GSA under this contract.

Also, this contract was subject to full and open competition and no set-asides were used.

## GG. Defendant Vee Model Management Consulting Inc.

121.     Defendant Vee Model Management Consulting Inc. ("Vee Model") is a Texas corporation with its principal place of business at 500 N. Central Expressway, Suite 201, Plano, TX.

122.     It is a reseller of office supplies. It currently maintains the following GSA contracts:

| Contract Number | FSC Group | Title | Categories | Original Contract Period | Current End Date |
|---|---|---|---|---|---|
| GS-02F-0275P | 75 | Office Products/ Supplies and Services and New Products/ Technology | 75 200 (Office Products) | 09/21/2009 - 09/21/2014 | 21-Sep-19 |
| GS-02F-0253P | 67 | photographic equipment - cameras, photographic printers and related supplies & services (digital and film-based) | 20 316 (Cameras and Accessories mm); 20 320 (Photo Digital Technologies) 132 12 (Maintenance of Equipment, Repair Services and/or Repair/Spare Parts - Subject to Cooperative | 09/2/2009 - 09/2/2014 | 9/2/2019 |
| GS-35F-0267R | 70 | general purpose commercial information technology equipment, software, and services | Purchasing); 132 8 Purchase of New Equipment - Subject to Cooperative Purchasing) | | |

123.     It sells Fellowes, Inc. products under the GSA contract number GS-02F-0275P (Schedule 75). It also advertises Fellowes, Inc. products under GSA contract number GS-35F-0267R (Schedule 70). Both were subject to full and open competition and no set-asides were used.

## HH. Defendant Bahfed Corp.

124.     Defendant Bahfed Corp. ("Bahfed") is an Oregon corporation with its principal place of business at 1000 SW Broadway, Suite 1110, Portland, OR.

125.     It is a reseller of office products. It advertises Fellowes, Inc. products under the following GSA contracts: 47QSEA18D0071 (Schedule 75), GS-35F-0431Y (Schedule 70), GS-

02F-123AA (Schedule 67), and GS02Q14DCR0007 (OS3). All were subject to full and open competition and no set-asides were used.

126. It also advertises Alera and Lorell products under the following contracts 47QSEA18D0071 (Schedule 75), GS-35F-0431Y (Schedule 70), and GS02Q14DCR0007 (OS3).

127. In addition, it also advertised Lorell products under contract number GS-02F-123AA (Schedule 67) in 2017.

128. Exhibit 12 shows sales of Alera and Lorell products by Bahfed to the Government.

## II. Defendant Advanced Digital Solutions International

129. Defendant Advanced Digital Solutions International ("ADSI") is organized under the laws of the state of California. Its principal place of business is at 4255 Business Center Drive, Fremont, CA.

130. It is certified as a WOSB and is a reseller of office products. It advertises Alera, Lorell, and Fellowes, Inc. products under GSA contract number GS-35F-0032Y (Schedule 70). This contract was subject to full and open competition and no set-asides were used.

131. ADSI also maintains GSA contract number GS-02F-0032R (Schedule 75), but the catalog for products advertised under this contract is unavailable at the time of this writing.

## JJ. Defendant Business Express, Inc.

132. Defendant Business Express, Inc. ("Business Express") is a North Carolina Corporation with its principal place of business at 3565 Scotts Hill Loop Rd., Wilmington, NC.

133. Business Express is certified as a WOSB and is a reseller of office products. It advertises Alera, Lorell, and Fellowes, Inc. products under GSA contract number GS-14F-

0024M (Schedule 75). This contract was subject to full and open competition and no set-asides were used.

134. In addition, Business Express also advertises Fellowes, Inc. products under contract number GS-35F-392CA (Schedule 70). This contract was subject to full and open competition and no set-asides were used.

## KK. Defendant Photikon Corporation

135. Photikon Corporation ("Photikon") is a New York corporation with its principal place of business at 100 Photikon Drive, Fairport, NY.

136. It is a certified as a WOSB and is a reseller of office products. It advertises Alera, Lorell, and Fellowes, Inc. products under GSA contract number GS-02F-0115V (Schedule 75). This contract was subject to full and open competition and no set-asides were used.

## LL. Defendant Component Sourcing Group

137. Defendant Component Sourcing Group ("CSG") is a California corporation with its principal place of business at 25301 Cabot Road, Suite 111, Laguna Hills, CA.

138. CSG is a reseller of office products and IT solutions. It currently advertises Alera and Fellowes, Inc. products under contract number GS-02F-0219W (Schedule 75). This contract was subject to full and open competition and no set-asides were used.

139. CSG also advertises Fellowes, Inc. products under contract number GS-35F-0357V (Schedule 70). This contract was also subject to full and open competition and no set-asides were used.

## MM. Defendant Computech International, Inc.

140. Defendant Computech International, Inc. ("CTI") is a New York Corporation with its principal place of business at 525 Northern Blvd., Great Neck, NY.

141. It is certified as a WOSB and is a reseller of office products and IT solutions. It advertises Fellowes, Inc. products under the following GSA contracts: GS-35F-0186P (Schedule 70) and GS-02F-0225X (Schedule 75). Both contracts were subject to full and open competition and no set-asides were used.

## NN. Defendant Firstcall Office Solutions, Inc.

142. Defendant Firstcall Office Solutions, Inc. ("Firstcall") is a California corporation with its principal place of business at 2538 W. 7th Street, Los Angeles, CA.

143. Firstcall is certified as a SDB and WOSB. It is a reseller of IT products. It currently advertises Fellowes, Inc. products under contract number GS-02F-0182S (Schedule 75). This contract was subject to full and open competition and no set-asides were used.

## OO. Defendant Focus Camera LLC

144. Defendant Focus Camera LLC ("Focus Camera") is organized under the laws of the State of New York. Its principal place of business is at 897 McDonald Avenue, Brooklyn, NY.

145. It is a reseller of photography and imaging equipment, as well as office products. It currently advertises Fellowes, Inc. products under contract number GS-35F-712GA (Schedule 70). This contract was subject to full and open competition and no set-asides were used.

## PP. Defendant A & T Marketing Inc. (d/b/a A & T Networks)

146. Defendant A & T Marketing Inc. (d/b/a A & T Networks) ("AT Networks") is a Maryland corporation with its principal place of business at 8257 Berryfield Drive, Baltimore, MD.

147. AT Networks is certified as a SDB and WOSB. It is a reseller of IT solutions. It currently advertises Fellowes, Inc. products under contract number GS-35F-400CA (Schedule 70). This contract was subject to full and open competition and no set-asides were used.

## QQ. Defendant American Toner And Supply, Inc.

148. Defendant American Toner And Supply, Inc. ("American Toner and Supply") is a Texas corporation with its principal place of business at 801 W. Nolana Ave., Ste 340, McAllen, TX.

149. It is a reseller of office products and IT supplies. It currently advertises Fellowes, Inc. products under contract number GS-35F-0489Y (Schedule 70). This contract was subject to full and open competition and no set-asides were used.

## RR. Defendant L & B Group, LLC d/b/a Precision Imaging

150. Defendant L & B Group, LLC d/b/a Precision Imaging is organized under the laws of the State of Texas. Its principal place of business is at 11450 Rojas Blvd. D 13, El Paso, TX.

151. Precision Imaging is certified as a SDB and is a reseller of office products. It currently advertises Fellowes, Inc. products under contract number GS-02F-0169W (Schedule 75). This contract was subject to full and open competition and no set-asides were used.

## SS. Defendant Adorama Inc.

152. Defendant Adorama Inc. ("Adorama") is a New York corporation with its principal place of business at 42 W 18th St., New York, NY.

153. Adorama is a reseller of IT solutions and photographic equipment. It currently advertises Fellowes, Inc. products under the following contracts: GS-02F-0016S (Schedule 67)

and GS-35F-0483X (Schedule 70). Both contracts were subject to full and open competition and no set-asides were used.

## TT. Defendant Diltex, Inc.

154. Defendant Diltex, Inc. ("Diltex") is a California corporation with its principal place of business at 1750 W Cameron Ave, Ste. 110, West Covina, CA.

155. Diltex is certified as a SBA 8(a) business,, SDB, and WOSB. It is a reseller of office products IT solutions. It currently advertises Fellowes, Inc. products under contract number GS-02F-0203V (Schedule 75). This contract was subject to full and open competition and no set-asides were used.

## UU. Defendant A&E Office and Industrial Supply

156. Defendant A&E Office and Industrial Supply ("AE Supply") has its principal place of business at 10302 Park Meadow Dr., Houston, TX.

157. AE Supply is certified as a WOSB and is a reseller of office products and IT solutions. It currently advertises Alera and Fellowes, Inc. products under contract number GS-02F-0059Y (Schedule 75). This contract was subject to full and open competition and no set-asides were used.

158. AE Supply also advertises Fellowes, Inc. products under contract number GS-35F-0427X (Schedule 70). This contract was also subject to full and open competition and no set-asides were used.

## VV. Defendant Olufadeji Amele d/b/a STEC-Steadfast Technics

159. Defendant Olufadeji Amele d/b/a STEC-Steadfast Technics ("STEC-Steadfast") is organized under the laws of the State of Minnesota. Its principal place of business is at 4080 West Brdwy., Ste. 104, Robbinsdale, MN.

160. STEC-Steadfast is certified as a SBA 8(a) and Small Disadvantaged Business (SDB). It is a reseller of office furniture, office supplies, and janitorial supplies. It currently maintains the following GSA contracts:

| Contract Number | FSC Group | Title | Categories | Original Contract Period | Current End Date |
|---|---|---|---|---|---|
| GS-02F-0099T | 75 | Office Products/ Supplies and Services and New Products/ Technology general purpose commercial information technology equipment, software, and services | 75 200 (Office Products); 75 85 (Restroom Products) | 5/14/2012 - 5/14/2017 | 14-May-22 |
| 47QTCA18D000L | 70 | | 132 8 Purchase of New Equipment - Subject to Cooperative Purchasing) | 10/13/2017 - 10/12/2022 | 10/12/2022 |

161. STEC-Steadfast advertises Alera, Lorell, and Fellowes, Inc. products under contract number GS-02F-0099T. This contract was subject to full and open competition and no set asides were used.

162. In addition, STEC-Steadfast advertises Fellowes, Inc. products under contract number 47QTCA18D000L. This contract was also subject to full and open competition and no set asides were used.

## WW. Defendant Qianglong Furniture Co., Ltd. f/k/a Zhejiang Qianglong Seating Co. Ltd.

163. Defendant Qianglong Furniture Co., Ltd. f/k/a Zhejiang Qianglong Seating Co. Ltd. ("Qlong") is a Chinese manufacturer of office furniture with its principal place of business at Dipu Industrial Development Zone, Anji , Zhejiang Province, 313300 China. Its General Manger is Richard Yc Ng. The company is also known as Zhejiang Anji Qianglong Steel and Plastic Furniture Co, Ltd.

164. Qlong is affiliated with Concept Furniture Anuhi Co., Ltd.

165. Qlong is listed as a manufacturer of office products for Defendant Acorn on GSA. Specifically, Defendant Acorn lists Qlong as the supplier for 106 office furniture products on GSA *Advantage!* that have the Alera identifier "ALE" on the product name.

## XX. Defendant Concept Furniture Anhui Co., Ltd.

166. Defendant Concept Furniture Anhui Co., Ltd. ("Concept Furniture") is a Chinese manufacturer of office furniture with its principal place of business at Guangde County Development Zone, Xuancheng, 242200, China.

167. Concept Furniture is listed as a manufacturer of office products for Defendant Acorn on GSA. Specifically, Defendant Acorn lists Concept Furniture as the supplier for 150 office furniture products on GSA *Advantage!* that have the Alera identifier "ALE" on the product name.

## YY. Defendant Global Furniture Zhejiang Co., Ltd.

168. Defendant Global Furniture Zhejiang Co., Ltd. ("Global Furniture") is a Chinese manufacturer of office chairs and recliners. Its principal place of business is at West Jier Road, Dipu Anji, Zhejiang China Huzhou, Zhejiang.

169. Global Furniture is listed as a manufacturer of office furniture products for Defendant Acorn on GSA. Specifically, Defendant Acorn lists Global Furniture as the supplier for 10 office furniture products on GSA *Advantage!* that have the Alera identifier "ALE" on the product name.

## ZZ. Defendant Wok & Pan Industry Inc.

170. Defendant Wok & Pan Industry Inc. Ltd. ("Wok and Pan") is a Chinese manufacturer of office products. On information and belief, its principal place of business is at

Tangja Village, Gonming Town, Bao'an Dist., Shenzhen City, Guangdong Province, China, 518132.

171. Wok and Pan is listed as a manufacturer of office products for Defendant Acorn on GSA. Specifically, Defendant Acorn lists Wok and Pan as the manufacturer for 10 office furniture products on GSA *Advantage!* that have the Alera identifier "ALE" on the product name.

## AAA. Defendant Keenston Enterprises Ltd.

172. Defendant Keenston Enterprises Ltd. ("Keenston") is a Hong Kong manufacturer of office furniture. Bills of Lading for shipments from Keenston to Defendant Supplier ECo show that the company has an office at Kwah Center, Java Rd. North Point, Hong Kong, TE29547902.

173. Although Keenston is headquartered in Hong Kong, it often exports office furniture products to Defendant ECo from mainland China. On information and belief, Keenston manufacturers office furniture in mainland China for Defendant ECo.

174. Keenston is listed as a manufacturer of office products for Defendant Acorn on GSA. Specifically, Defendant Acorn lists Keenston as the supplier for 121 office furniture products on GSA *Advantage!* that have the Alera identifier "ALE" on the product name.

## BBB. Defendant King Long Metal Industrial

175. Defendant King Long Metal Industrial ("King Long") is a Chinese manufacturer. On information and belief, its principal place of business is at No. 516 Kunjia Road Bin Xi Kunshan JS China.

176. King Long is listed as a manufacturer of office products for Defendant Acorn on GSA. Specifically, Defendant Acorn lists King Long as the manufacturer for 41 office furniture products on GSA *Advantage!* that have the Alera identifier "ALE" on the product name.

177. The Consumer Product Safety Commission ("CBSC") recalled a shelf of King Long Metal Industrial Company, Ltd. in 2010. The shelf was made in China. CBSC lists King Long as being located in Trumbull, CT.[11] On information and belief, the address is 5976 Main St., Trumbull, CT 06611.[12] According to the Trumbull Assessor's Office, this is a single family residence.[13] CBSC also lists King Long's customer service phone number as (866) 375-7994 and email address as customerservicegsm@sbcglobal.net. This is the same contact information that is listed on some of Alera's Assembly Instructions manuals.[14]

## V.    RELEVANT LAW

### A. False Claims Act

178. The False Claims Act provides, in pertinent part, that any person who:

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or]…

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or

---

[11] A business search on the Connecticut Secretary of State's website yields no results for King Long.

[12] In a 2007 lawsuit filed by King Long Metal Industrial USA, LLC (07-CV-01400-TON), the company identified itself as a Connecticut corporation with its principal place of business at 5976 Main St., Trumbull, CT 06611.

[13] The Trumbull Assessor's office lists the owner of this property as Ronald W. Behrns.

[14] *See*, *e.g.* Assembly Instructions manual for Alera shelf ALESW504824BL, http://www.aleradetails.com/wp-content/uploads/resources/instructions/ALESW503618%20ALESW504818%20ALESW503624%20ALESW504824.pdf

decreases an obligation to pay or transmit money or property to the
Government, is liable to the United States Government for a civil penalty of
not less than $5,000 and not more than $10,000, . . . plus 3 times the amount
of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a) (2006), as amended by 31 U.S.C. § 3729(a)(1) (West 2010).[15]

179. For purposes of the False Claims Act,

(1) the terms "knowing" and "knowingly"

(A) mean that a person, with respect to information – (1) has actual knowledge
of the information; (2) acts in deliberate ignorance of the truth or falsity of
the information; or (3) acts in reckless disregard of the truth or falsity of
the information; and

(B) require no proof of specific intent to defraud.

31 U.S.C. § 3729(b) (2006), as amended by 31 U.S.C. § 3729(b) (West 2010).

## B. Trade Agreement Act

180. The Buy American Act ("BAA") limits U.S. Government procurements, over a

certain dollar value,[16] of "manufactured articles, materials, and supplies" to those that "have been

manufactured in the United States substantially all from articles, materials, or supplies mined,

produced, or manufactured in the United States . . . ." 41 U.S.C. § 8302.

181. The Trade Agreements Act ("TAA") authorizes the President to waive, in certain

instances, domestic preferences, including the Buy American Act, in federal procurements, and

to treat goods from countries with which the United States has trade agreements the same as

domestic goods. *See* 19 U.S.C. § 2511. "The President has delegated this waiver authority to the

U.S. Trade Representative." 48 CFR § 25.204(a)(1)

---

[15] Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the
Debt Collection Improvement Act of 1996, 28 U.S.C. § 2461 (notes), and 64 Fed. Reg. 47,099,
47,103 (1999), the False Claims Act civil penalties were adjusted to $5,500 to $11,000 for
violations occurring on or after September 29, 1999.

[16] Contracts that are below the TAA threshold

182. The TAA applies to federal procurements valued in excess of threshold amounts (revised about every two years). Currently, the TAA applies to acquisitions of supplies or services valued at more than about $180,000, but thresholds vary by acquisition type, purchasing agency, and a product's country of origin. *See* 48 CFR 25.402(b), 25.403(b).

183. If the value of a Government contract exceeds the TAA threshold, with limited exceptions, *see id.* 25.401, the procuring agency may procure only end products that are (i) mined, produced, or manufactured in the U.S. or a "designated country," or are (ii) "substantially transformed" in the U.S. or a "designated country." *See* 19 U.S.C. §§ 2511-2512; 48 CFR §§ 25.402, 25.502(b), 52.225-5.

184. The exceptions to the TAA are:

(1) Acquisitions set aside for small businesses;
(2) Acquisitions of arms, ammunition, or war materials, or purchases indispensable for national security or for national defense purposes;
(3) Acquisitions of end products for resale;
(4) Acquisitions from Federal Prison Industries, Inc., under subpart 8.6, and acquisitions under subpart 8.7, Acquisition from Nonprofit Agencies Employing People Who Are Blind or Severely Disabled; and
(5) Other acquisitions not using full and open competition, if authorized by subpart 6.2 or 6.3, when the limitation of competition would preclude use of the procedures of this subpart; or sole source acquisitions justified in accordance with 13.501(a).

48 CFR § 25.401(a).

185. "Substantial transformation" means that a product is made into a "new and different article of commerce" with a name, character, or use distinct from that of the article or articles from which it was transformed. An article is not substantially transformed by minor manufacturing or combining processes that leave its identity intact. The assembly process must be complex and meaningful. *See* 19 U.S.C. § 2518(4)(B); 48 CFR § 25.001(c)(2); 48 CFR § 52-225-5.

186. "Designated country" means any of the following countries:

(1) A World Trade Organization Government Procurement Agreement (WTO GPA) country (Armenia, Aruba, Austria, Belgium, Bulgaria, Canada, Croatia, Cyprus, Czech Republic, Denmark, Estonia, Finland, France, Germany, Greece, Hong Kong, Hungary, Iceland, Ireland, Israel, Italy, Japan, Korea (Republic of), Latvia, Liechtenstein, Lithuania, Luxembourg, Malta, Moldova, Montenegro, Netherlands, New Zealand, Norway, Poland, Portugal, Romania, Singapore, Slovak Republic, Slovenia, Spain, Sweden, Switzerland, Taiwan (known in the World Trade Organization as "the Separate Customs Territory of Taiwan, Penghu, Kinmen and Matsu (Chinese Taipei)"), Ukraine, or United Kingdom);

(2) A Free Trade Agreement (FTA) country (Australia, Bahrain, Canada, Chile, Colombia, Costa Rica, Dominican Republic, El Salvador, Guatemala, Honduras, Korea (Republic of), Mexico, Morocco, Nicaragua, Oman, Panama, Peru, or Singapore);

(3) A least developed country (Afghanistan, Angola, Bangladesh, Benin, Bhutan, Burkina Faso, Burundi, Cambodia, Central African Republic, Chad, Comoros, Democratic Republic of Congo, Djibouti, Equatorial Guinea, Eritrea, Ethiopia, Gambia, Guinea, Guinea-Bissau, Haiti, Kiribati, Laos, Lesotho, Liberia, Madagascar, Malawi, Mali, Mauritania, Mozambique, Nepal, Niger, Rwanda, Samoa, Sao Tome and Principe, Senegal, Sierra Leone, Solomon Islands, Somalia, South Sudan, Tanzania, Timor-Leste, Togo, Tuvalu, Uganda, Vanuatu, Yemen, or Zambia); or

(4) A Caribbean Basin country (Antigua and Barbuda, Aruba, Bahamas, Barbados, Belize, Bonaire, British Virgin Islands, Curacao, Dominica, Grenada, Guyana, Haiti, Jamaica, Montserrat, Saba, St. Kitts and Nevis, St. Lucia, St. Vincent and the Grenadines, Sint Eustatius, Sint Maarten, or Trinidad and Tobago).

48 CFR § 52.225-5. Notably, China is not a designated country.

## C. GSA Contract Requirements and Certifications

187. Federal Supply Schedule ("FSS") contracts (also known as Multiple Award

Schedules ("MAS")) are long-term governmentwide contracts with commercial firms for

obtaining supplies and services. The FSS program is directed and managed by the GSA. *See* 48

CFR 8.402(a). The contract is governed by specific regulations and provisions of the Federal Acquisition Regulation ("FAR").[17]

188.    A vendor that is awarded an FSS contract must publish an "Authorized Federal Supply Schedule Pricelist" for every product or service it offers under the contract (or "schedule"). Federal agencies can then order products or services from the contractor, up to maximum amounts, at the agreed prices, and under the agreed terms and conditions, for the duration of the FSS Contract. *See* FAR 8.402(b).

189.    The GSA has determined that the TAA applies to every Schedule Contract because the anticipated dollar value of every Schedule Contract automatically exceeds the TAA threshold. *See* GSA guidelines *Using Multiple Award Schedules* at 28.[18] Thus, absent narrow exceptions, *see* FAR § 25.401, only products made or substantially transformed in the United States or in designated countries can be offered or sold under FSS Contracts. The TAA applies to Defendant Resellers' GSA contracts.

190.    To implement this TAA requirement, FSS Contractors are required to certify that, unless the Government specifically agrees to an exception, all products for sale under an FSS contract will comply with the TAA, i.e., will be made or substantially transformed in the United States or a designated country. FSS Contracts contain the *Trade Agreements Act* clause which sets forth the requirements of the TAA. *See* FAR § 52.225-5(b).[19] ("The Contractor shall deliver

---

[17] https://www.gsa.gov/acquisition/assistance-for-small-businesses/get-started/understand-how-gsa-buys

[18] https://www.gsa.gov/cdnstatic/Final_MAS_Advanced_Student_Guide_2017_05_17.pdf

[19] Clause 52.225-5, *Trade Agreements*, is inserted in solicitations and contracts valued at $180,000 or more, if the acquisition is covered by the WTO GPA and the agency has determined that the restrictions of the BAA are not applicable to U.S.-made end products. *See* FAR 25.1101(c)(1). The *Trade Agreements Certificate*, FAR 52-225-6, is inserted in solicitations containing the clause at 52.225-5. *See* FAR 25.1101(c)(2).

under this contract only U.S.-made or designated country end products except to the extent that, in its offer, it specified delivery of other end products in the provision entitled *Trade Agreements Certificate*.") FSS Contractors execute the *Trade Agreements Certificate* when bidding on an FSS Contract and, in doing so, certify the following: "(a) The offeror certifies that each end product, except those listed in paragraph (b) of this provision, is a U.S.-made or designated country end product, as defined in the clause of this solicitation entitled 'Trade Agreements.' (b) The offeror shall list as other end products those supplies that are not U.S.-made or designated country end products. [Products listed as necessary.]" FAR § 52.225-6(a) (May 2014).

191.    On May 5, 2016, the GSA issued a notice to contractors concerning TAA compliance. The letter states:

"Products manufactured in any country(ies) not listed [on Clause 52-225-5] are not TAA compliant and therefore cannot be awarded or allowed to remain under MAS contracts if the country of origin has changed since the award...The continued reoccurrence of non-compliant product threatens the integrity of the MAS contracts and GSA Advantage! website which federal costumers rely on to make daily purchases that are compliant with the Federal Acquisition Regulation (FAR). This threat cannot be tolerated for the good of the federal procurement community, MAS business line, and continued success of a primary system you rely on to serve federal customers. GSA has determined that it is in the best interest of all parties to require that each vendor review their total offering of product and: a) Submit a spreadsheet that verifies the COO for each product approved on your GSA contract. For any item found to be manufactured in the United States or a TAA Designated Country, provide a copy of the Certificate of Origin **OR** certification from manufacturer on official letterhead verifying the product(s) they supply are compliant with Trade Agreements Act....b) During your review, if any awarded items are found to be manufactured in a non-TAA Designated Country you must...Submit an eModification request to delete all non-TAA items from your contract....**Failure to process required actions by the required date may result in the removal of your entire GSAdvantage [sic] file**...In the future, any products represented as having a country of origin that is TAA compliant, but is later found to be manufactured in any non-TAA compliant countries, or is represented a Made In America but determined not to be, could result in the removal of you entire GSAdvantage [sic] file and/or subject your contract or cancellation per Clause 552.238-73." (emphasis in original)

192.    If the offeror is not a manufacturer, FSS Contracts also include clause I-FSS-644 stating that the offeror must submit, prior to award of a contract and upon request of the Contracting Officer, either (1) a letter of commitment from the manufacturer which will assure the offeror of a source of supply sufficient to satisfy the Government's requirements for the contract period, or (2) evidence that the offeror will have an uninterrupted source of supply from which to satisfy the Government's requirements for the contract period.

193.    Offerors comply with this requirement by obtaining a Letter of Supply/Commitment[20] from the supplier/manufacturer. In the letter, the supplier/manufacturer states that it will assure an uninterrupted source of supply for the duration of the contract period, that it understands that all products offered on the reseller's FSS contract must be TAA compliant, and that it will work and cooperate with the reseller to support reseller's TAA compliance of items offered on its contract and to provide country of origin information to reseller for the items supplied.[21] *See* sample Letters of Supply for Schedules 71 and 75, Exhibit 13.

194.    FSS Contractors advertise and sell their products and services online to various federal agencies through the GSA *Advantage!* website.

---

[20] The Letter of Supply is included in the Solicitation.

[21] This is the sample language in a Letter of Supply and, although it is sufficient, suppliers may provide additional verbiage as long as the verbiage does not contradict these statements. (https://www.gsa.gov/portal/getMediaData?mediaId=161527) Guaranteeing TAA compliance is a required component of an acceptable Letter of Supply. (https://www.va.gov/opal/docs/nac/fss/I-FSS-644withNotesAndTemplate.docx)

195.    As of June 2018, there are approximately 19,000 FSS contracts in place

covering over 11 million supplies and/or services.[22] Approximately 80% of all GSA

contractors are small businesses.[23]

*C.1. States and Local Governments*

196.    States and local governments can also purchase products and services

through GSA. Table 1 below shows what they can purchase and when.[24] Some of the

Defendant Resellers state on their websites that they sell products to States and local

governments, but Relator does not know which states/local governments and what

products they have sold to them.

**Table 1**

State, local, tribal governments and educational institutions may utilize the following programs to buy goods and services.

| Program Name | Description |
| --- | --- |
| Cooperative Purchasing Program | IT, security, and law enforcement products, services, and solutions that support everyday activities and your overall mission are available through Schedule 70 and Schedule 84. |
| Disaster Purchasing Program | Products and services under all Schedules are available, when buying in support of disaster preparation, response, and major disaster recovery, as well as recovery from biological, radiological, or terrorist attacks. |
| Public Health Emergencies | Products and services offered under all Schedules when spending federal grants funds in direct response to public health emergencies. |
| 1122 Program | Equipment to support counterdrug missions, homeland security, and emergency response from General Services Administration (GSA), Defense Logistics Agency (DLA), and Department of Defense (DoD) sources of supply. Equipment from GSA sources is limited to specific Schedules and specific vehicles available from GSAâ€™s AutoChoice Program. Contact your State Point of Contact (SPOC) for the 1122 program [PDF - 33 KB]. |

---

[22] http://sws.gsa.gov/sws-search/viewSolDocument.do?method=view&solNum=M1FTQS1KQi0xMDAwMDEtQg==&solRefresh=MjQ=&solDoc=MDkwMDI5YjQ4NTVhOWJlMg==

[23] GSA, *Small Business Utilization*, https://www.gsa.gov/buying-selling/purchasing-programs/gsa-schedules/small-business-utilization

[24] GSA, State And Local Governments, https://www.gsa.gov/buying-selling/purchasing-programs/gsa-schedules/schedule-buyers/state-and-local-governments

197. In addition, some states, such as California,[25] also have their own Multiple Award Schedule programs.

## VI. COMPANY WRONGDOING

198. Defendant Suppliers ECo, SPR, and Fellowes, Inc. are wholesalers of office products. Each has a proprietary office products brand – Alera is ECo's office furniture line, Lorell is SPR's office furniture line, and Fellowes is Fellowes, Inc.'s line of office supplies. All three sell their products to the Government through various resellers on GSA *Advantage!* under the resellers' respective FSS contracts. Upon request of the GSA Contracting Officers, ECo, SPR, and Fellowes, Inc. must provide their resellers with a Letter of Supply guaranteeing, *inter alia*, that their Alera, Lorell, and Fellowes products are TAA compliant. However, all three have been knowingly supplying noncompliant office products that were made in China to the Defendant Resellers to sell to the Government in violation of the TAA. To accomplish this, ECo, SPR, and Fellowes, Inc. have been providing false country of origin information for their products to their resellers to advertise on GSA *Advantage!*.

199. Exhibits 1 and 2 list Alera office products that were made in China. Exhibits 3 and 4 list Lorell office products that were made in China. Exhibits 5-10 show which Alera and/or Lorell products at issue were made by each Defendant Manufacturer. Exhibit 11 lists office products of Fellowes, Inc. that were made in China.

### A. ECo and its resellers

200. ECo has been knowingly providing false country of origin information and/or supplying noncompliant Alera products to *at least* twenty-four (24) Defendant Resellers to

---

25

https://www.google.com/search?q=california+gsa+purchases&rlz=1C1CHBF_enUS761US761&oq=california+gsa+purchases&aqs=chrome..69i57.14087j0j7&sourceid=chrome&ie=UTF-8

advertise and sell to the Government on GSA *Advantage!* in violation of the TAA. ECo has even drop-shipped its non-compliant products directly to the Government from its own distribution centers.

201.    GSA awarded contract GS-02F-0191V to Defendant Reseller Axiscore in 2009 to provide office supplies/furniture to the Government under Schedule 75. Although Axiscore is an SDB and 8(a) Business, this contract was subject to full and open competition and no set-asides were used. As such, the relevant TAA exceptions in FAR 25.401 do not apply to this contract and all products sold to the Government under this contract must be TAA compliant. In addition, Axiscore certified to the Government that all products advertised and sold under this contract are in fact TAA Compliant.[26] This statement is demonstrably false because, as is shown herein, Axiscore sells products that are manufactured in China on GSA *Advantage!*.

202.    Axiscore lists various manufacturers on GSA *Advantage!* for products offered under category 75-200. Among them is Alera, ECo's office furniture line.

203.    One of the products that ECo supplies to Axiscore is the Alera Logan Series Mesh High-Back Swivel Chair (Manufacturer Part No.: ALELG41ME10B). Under the product's description on GSA *Advantage!*, Axiscore states that this chair was made in Taiwan, a TAA designated country. *See* Image 1 below.

---

[26] GSA contract clause FAR 52-225-6, *Trade Agreements Certificate,*
https://www.gsaelibrary.gsa.gov/ElibMain/contractClauses.do?scheduleNumber=75&contractNumber=GS-02F-0191V&contractorName=AXISCORE%2C+LLC&duns=618932227&source=ci&view=clauses

# Image 1[27]



204.    Relator Castillejos learned from a conversation with Andron Lewellyn, Logistics

Specialist LSSN, that the Navy has purchased this chair from Axiscore. On September 6, 2017,

Mr. Lewellyn, purchased fifteen (15) Alera Logan Series chairs through GSA *Advantage!*

(Purchase Order No. 47QDCC17FFWNT). Each chair cost $119.71, for a total of $1,795.55. Mr.

Lewellyn specified that the chairs should be shipped to the following address: Navy, Saufley Rd.

Bldg. Rm. #118, San Diego, CA 92135.

205.    The chairs arrived at the COMHSMWINGPAC warehouse on September 11,

2017. Dennis Fore, Material Handler, received the shipment from Oak Harbor Freight Lines, Inc.

and informed his Supervisor, Relator Castillejos, that the labels on the shipment boxes state that

---

[27] Emphasis supplied

the chairs were made in China. *See* Images 2 and 3 below. Mr. Fore knew from experience that

the Navy cannot purchase products that are made in China.[28]

**Image 2[29]**



---

[28] Unless the Government specifically agrees to an exception under Far 25.401. *See* ¶ 184 herein.
[29] Emphasis supplied

**Image 3**



206. As Image 2 shows, the labels on the shipment boxes also state that the chairs require assembly. This means that the chairs were manufactured in China and were not "substantially transformed" in the United States.

207. Relator Castillejos and Mr. Fore approached the driver from Oak Harbor Freight Lines, Inc. who delivered the shipment and asked him about the "Made In China" labels on the boxes. The driver simply stated that, lately, he had noticed that products delivered on-base often state "Made In China."

208. On September 12, 2017, Relator Castillejos approached Adrian Silva, Logistics Specialist LS2 for the Navy, and told him about the shipment and the issue he had encountered. Mr. Silva told the Relator that his department ordered the chairs and one of his subordinates, Mr. Lewellyn, used the GSA website to place the order.

209. Relator Castillejos asked Mr. Lewellyn for the order receipts to confirm that the chairs were purchased through GSA *Advantage!*. Mr. Lewellyn provided Relator Castillejos with the GSA Purchase Order referenced above and the Delivery Receipt for the shipment. The Delivery Receipt shows that the boxes were shipped from Defendant ECo's distribution center in City of Industry, CA directly to the naval base in San Diego, CA by Oak Harbor Freight Lines, Inc. In other words, while the Navy ordered this chair from Axiscore, ECo "drop-shipped" the chairs to the naval base.

210. This means that ECo had the Alera chairs in its possession; knew that Axiscore is required to sell TAA compliant products to the Government in accordance with the Letter of Supply it had to provide to Axiscore; knew that the chairs in this order were made in China and were not substantially transformed in the United States; knew that China is not a TAA designated country; and knew that the chairs were being delivered to the Navy, a department of

the United States Government, because it drop-shipped them from its distribution center in City of Industry, CA. ECo knowingly supplied non-TAA-compliant chairs to Axiscore to sell to the Government and misrepresented to Axiscore and the Government that the chairs were made in Taiwan.

211. ECo did *not only* provide false country of origin information to Axiscore; it provided false information to many of its other resellers as well. Defendant Reseller Replenish Ink also advertises the Alera Logan Series chair on GSA *Advantage!* under contract number GS-02F-0143S. However, Replenish Ink lists the country of manufacture as United States of America. *See* Image 4 below.

Image 4



212. Although Replenish Ink is a SBD, this contract was subject to full and open competition and no set-asides were used. This means that none of the relevant TAA exceptions in FAR 25.401 apply to this contract. Also, Replenish Ink certified to the Government that all

products advertised and sold under this contract are TAA compliant.[30] As Image 2 shows, the Alera Logan Series chairs are not TAA compliant because they are made in China, not Taiwan or the USA as is advertised by Defendants Axiscore and Replenish Ink on GSA *Advantage!*.

213.    Research into Alera products listed on GSA *Advantage!* reveals that ECo advertises many Alera products on GSA *Advantage!* that are **not TAA compliant according to Alera's own records**. Exhibit 1 lists twenty-six (26) *other models* of Alera office chairs advertised by Defendant Resellers Axiscore, Replenish Ink, Acorn, Federal Merchants, Zee Tech., SEVA, Ibuyofficesupply, and Patriot Ink on GSA *Advantage!* that were made in China. Below are three (3) examples from Exhibit 1.

> A. Defendant Resellers Axiscore, Replenish Ink, and Zee Tech. advertise Alera chair ALEMA41LS10M on GSA *Advantage!*. *See* row 6. Axiscore advertises the country of origin as Taiwan and sells the chair for $191.65. Replenish Ink and Zee Tech. advertise the country of origin as USA and sell the chair for $388.39 and $212.04, respectively. However, Alera's own Assembly Instruction manual states that this specific chair was made in China for USSCo (ECo's former name). Defendant Acorn also advertises this same Alera chair, with the same manufacturer part number, on GSA *Advantage!* for $266.86. However, Defendant Reseller Acorn state lists the country of origin as USA and the manufacturer as Defendant Qlong, a Chinese manufacturer. *See* Exhibit 5, Row 6.

---

[30] *See* contract clause 52.225-6, *Trade Agreements Certificate*, https://www.gsaelibrary.gsa.gov/ElibMain/contractClauses.do?scheduleNumber=75&contractNumber=GS-02F-0143S&contractorName=REPLENISH+INK+INC.&duns=091121058&source=ci&view=clauses

B. Defendant Resellers Axiscore and Zee Tech. advertise Alera chair ALEVN4119 on GSA *Advantage!*. *See* row 4. Axiscore advertises the country of origin as Taiwan and sells the chair for $194.95. Zee Tech. advertises the country of origin as USA and sells the chair for $228.87. However, Alera's own Assembly Instruction manual states that this specific chair was made in China for USSCo (ECo's former name). Defendant Acorn also advertises this same Alera chair, with the same manufacturer part number, on GSA *Advantage!* for $352.79. However, Defendant Reseller Acorn lists the country of origin as USA and the manufacturer as Defendant Global Furniture, a Chinese manufacturer. *See* Exhibit 7, Row 5.

C. Defendant Resellers Axiscore and SEVA advertise Alera chair ALEKE4218 on GSA *Advantage!*. *See* row 25. Both advertise the country of origin as Taiwan and sell the chair for $375.85 and $749.42, respectively. However, Alera's own Assembly Instruction manual states that this specific chair was made in China for ECo. Defendant Acorn also advertises this same Alera chair, with the same manufacturer part number, on GSA *Advantage!* for $489.99. However, Defendant Reseller Acorn lists the country of origin as USA and the manufacturer as Defendant Global Furniture, a Chinese manufacturer. *See* Exhibit 7, Row 3.

214.    In addition, Exhibit 2 lists sixty-nine (69) other Alera products – including bookshelves, storage-shelves, and desks – advertised by Defendant Resellers Axiscore, Replenish Ink, Acorn, SEVA, Mensch, MJL, Source One, New Century Tech, Hardware, WECsys, Pelican Sales, Tonerquest, Red Hill, 3-Vets, Caprice, Cuna Supply, IS Enterprises,

KPaul, Pacific Ink, and CAPP on GSA *Advantage!* that are also not TAA compliant. Below are three (3) examples from Exhibit 2.

A. Defendant Reseller Axiscore and Replenish Ink advertise Alera loveseat ALERL21LS10B on GSA *Advantage!*. *See* row 16. Axiscore advertises the country of origin as Taiwan and sells the item for $461.87. Replenish Ink advertises the country of origin as USA and sells the item for $1,157.76. However, Alera's own Assembly Instructions manual states that the bookcase was made in China for USSCo (ECo's former name). Defendant Reseller Acorn also advertises this exact Alera shelf, with the same manufacturer part number, on GSA *Advantage!* for $733.03. Acorn also lists the country of origin as USA. However, Acorn lists the manufacturer as Defendant Qlong, a Chinese manufacturer. In addition, a sample Bill of Lading (No. DMCQNPO0594936) shows that this item were shipped from Defendant Qlong to ECo on July 21, 2015. The port of loading for the shipment was Ningbo, China (mainland). *See* Exhibit 5, Row 19.

B. Defendant Resellers Axiscore and Replenish Ink advertise Alera bookcase ALEVA633032MY on GSA *Advantage!*. *See* row 7. Axiscore advertises the country of origin as Taiwan and sells the chair for $71.48. Replenish Ink advertises the country of origin as USA and sells the chair for $170.56. However, Alera's own Assembly Instructions manual states that the bookcase was made in China for ECo. Defendant Reseller Acorn also advertises this exact Alera shelf, with the same manufacturer part number, on GSA *Advantage!* for $126.00. Defendant Reseller Acorn lists the country of origin as USA. However, Acorn

Page **65** of **94**

lists the manufacturer as Defendant Concept Furniture, a Chinese manufacturer. *See* Exhibit 6, Row 5.

C. Defendant Reseller Replenish Ink advertises Alera bookshelf ALEBCS67212MC on GSA *Advantage!* for \$161.64. It advertises the country of origin as USA. *See* row 23. However, Alera's own Assembly Instructions manual states that the shelf was made in China for ECo. Defendant Reseller Acorn also advertises this same Alera shelf, with the same manufacturer part number, on GSA *Advantage!* for \$163.90. Defendant Reseller Acorn also lists the country of origin as USA. However, Defendant Reseller Acorn lists the manufacturer as Defendant Keenston, a Hong Kong manufacturer. *See* Exhibit 9, row 3. A sample Bill of Lading[31] (No. DMCQYAT5128116) shows that Defendant Keenston shipped 30 pieces of this bookshelf to USSCo (ECo's former name) on April 14, 2014. The port of loading for the shipment was Yantian, China (mainland). Another Bill of Lading (No. DMDUSHZ1876273) shows that 100 pieces were shipped from Keenston to ECo on November 13, 2015. The port of lading was again Yantian, China. On information and belief, although Defendant Keenston is headquartered in Hong Kong, it manufactures Alera office furniture products in China.

215.    The foregoing are but a sample of Alera products advertised on GSA *Advantage!* by different resellers in violation of the TAA. There are many others. For example, the Army purchased Alera Steel Folding Chairs (Manufacturer Part No.: ALE-FC94LG) from Defendant

---

[31] The sample Bills of Lading referenced herein for imports by ECo list Kuehne + Nagel Inc. ("K+N") as the party to be notified. K+N is a global logistics company headquartered in Switzerland. The company has many locations throughout the United States, including four (4) in Massachusetts (Boston, Chelsea, Waltham, and Rockland).

Reseller Replenish Ink on August 17, 2017.[32] Replenish Ink was awarded $16,405.96. Replenish Ink advertises the chair for $175.19 on GSA *Advantage!*, and lists the country of origin as Mexico. *See* Exhibit 1, Row 27. This same chair, with the same manufacturer part number, is also advertised by Defendant Reseller Acorn on GSA *Advantage!* for $122.49. However, Acorn lists the country of origin as USA and the manufacturer as Defendant Wok and Pan, a Chinese manufacturer. *See* Exhibit 8, Row 7. Alera has not issued an Assembly Instructions manual for this chair on its website.

216.    ECo and all its Defendant Resellers violated the TAA. In its Letter of Supply, ECo was required to guarantee to the Government that it would supply its resellers with TAA compliant products sufficient to satisfy the Government's requirements for the resellers' contract period. However, ECo, knowing that its Alera products were manufactured in China, misrepresented the country of origin to the resellers and to the Government. ECo drop-shipped its non-compliant products directly to the Government in violation of the TAA.

217.    All of the Defendant Resellers' contracts at issue were subject to full and open competition and no set-asides were used in awarding any of these contracts to the Defendant Resellers. *See* ¶¶ 22-162 herein. Furthermore, each Defendant Reseller certified to the GSA that products advertised and sold under its contract(s) are TAA compliant. *See* clause 52.225-6 *Trade Agreements Certificate* for each relevant contract in ¶¶ 22-162 herein. Based on information it received from Defendant ECo, each Defendant Reseller advertised on GSA *Advantage!* that the Alera products were made in the USA or a TAA designated country. Resellers have a responsibility to confirm the country of origin of the products they sell to the Government

---

[32] *See* Replenish Ink all contracts prime transactions, Row 37,
https://files.usaspending.gov/generated_downloads/all_prime_transactions_subawards_2018112
0210351.zip

because they holds the GSA contract, and resellers acknowledge this. *See*, *e.g.*, ¶¶ 27, 38, 57, 82, 92, and 102 herein. The failure by ECo to provide true and correct country of origin information for its Alera products, and the failure by the Defendant Resellers to verify the country of origin of the Alera products, caused the Government to purchase products that are not TAA compliant.

## B. SPR and its resellers

218. SPR has been knowingly providing false country of origin information and/or supplying noncompliant Lorell products to *at least* nine (9) Defendant Resellers to advertise and sell to the Government on GSA *Advantage!* in violation of the TAA.

219. After receiving the Alera chair (Manufacturer Part No.: ALELG41ME10B) described in paragraphs 203-210 herein, Relator Castillejos asked the Material Handlers he supervises to notify him if they observe other products with "Made in China" labels. On or about July 2018, David Cisneros, Material Handler, notified Relator Castillejos that another shipment box states that the product was "MADE IN CHINA." *See* Image 5 below. The label on the box shows that Jesse Jessen, Logistics Specialist – Petty Officer 2nd Class, purchased one (1) Lorell Tufted Leather High Chair (Manufacturer Part No. LLR60116) from Defendant Reseller Laser Plus Imaging on July 23, 2018.

**Image 5**



220.     After the chair was delivered, Relator Castillejos asked Mr. Jessen for the order
receipt to find out whether the chair was purchased through GSA *Advantage!*. Mr. Jessen told
Relator Castillejos that he had purchased the chair from Laser Plus Imaging via phone using his
government credit card. However, he explained that, while researching what kind of chair to
purchase, he saw that Laser Plus Imaging advertised this Lorell chair on GSA *Advantage!*. But
when he went to buy the chair days later, Laser Plus Imaging no longer listed this Lorell chair on
GSA *Advantage!*. As such, he called Laser Plus Imaging and purchased the chair directly from
the company. On its website, Laser Plus Imaging states that this Lorell chair is made in China.

221.     Mr. Jessen gave Relator Castillejos the Quote he received from Laser Plus
Imaging. The Quote shows that Naomi Seymour, LS2 working in the HSL-43 department,
obtained a quote for the chair from Elyse Wilson, Salesperson at Laser Plus Imaging, on June 7,
2018. Mr. Jessen told the Relator that he was the one who actually ordered the chair. The chair
cost $258.40, including delivery charge. The chair arrived at the COMHSMWINGPAC
warehouse on July 26, 2018. Jarrod Thomson, Logistics Specialist Petty Officer 2nd Class, signed
off on the delivery of the chair.

222.     Defendant KPaul currently advertises Lorell chair LLR60116 on GSA
*Advantage!*. KPaul lists the country of origin as USA sells the chair for $239.27. *See* Exhibit 3,
row 2. Until on or about October 9, 2018, Defendant Discover Group also advertised this Lorell
chair on GSA *Advantage!* for $208.79. Discover Group listed the country of origin as Japan, a
TAA-designated country. However, Lorell's own records confirm that the chair is not TAA
compliant because it is made in China. On its website, Lorell specifically states "Country of
Origin: China" for this particular chair.

223.    Research into Lorell products listed on GSA *Advantage!* reveals that SPR advertises many Lorell products to the Government that are **not TAA compliant according to Lorell's own records**. Exhibit 3 lists fifty-three (53) *other models* of Lorell office chairs advertised by Defendant Resellers KPaul, Acorn, Ibuyofficesupply, Mensch, Federal Merchants, and JLWS that were made in China. Below are three (3) examples from Exhibit 3.

> A. Defendant Resellers KPaul, Mensch, and Acorn advertise Lorell chair LLR60501 on GSA *Advantage!*. *See* row 21. KPaul and Acorn advertise the country of origin as USA and sell the chair for $332.56 and $305.79, respectively. Mensch advertises the country of origin as Taiwan, a TAA-designated country, and sells the chair for $349.90. However, on its website, Lorell specifically states that this chair was made in China.

> B. Defendant Resellers Ibuyofficesupply, Mensch, and JLWS advertise Lorell chair LLR60338 on GSA *Advantage!*. *See* row 3. Ibuyofficesupply and JLWS advertise the country of origin as Chile and sell the chair for $218.93 and $319.55, respectively. Mensch advertises the country of origin as Taiwan and sells the chair for $224.55. Both Chile and Taiwan are TAA-designated countries. However, on its website, Lorell specifically states that this chair was made in China.

> C. Defendant Resellers KPaul and Mensch advertise Lorell chair LLR40202 on GSA *Advantage!*. *See* row 52. KPaul advertises the country of origin as Taiwan and sells the chair for $117.73. Mensch advertises the country of origin as Mexico and sells the chair for $129.49. Both Taiwan and Mexico are TAA-designated

countries. However, on its website, Lorell specifically states that this chair was made in China.

224. In addition, Exhibit 4 lists twenty-six (26) other Lorell office products—including shelves, bookcases, bulletin boards, mounting panels, conference tables, and compact refrigerators—advertised by Defendant Resellers KPaul, Mensch, Federal Merchants, and DBISP on GSA *Advantage!* that are also not TAA compliant. Below are three (3) examples from Exhibit 4.

> A. Defendant Resellers KPaul, Federal Merchants, and Mensch advertise Lorell riser-desk LLR81974 on GSA *Advantage!*. *See* row 9. KPaul and Federal Merchants advertise the country of origin as USA and sell the item for $280.91 and $195, respectively. Mensch advertises the country of origin as Taiwan, a TAA-designated country, and sells the item form $349.30. However, on its website, Lorell specifically states that this raiser desk was made in China.

> B. Defendant Resellers KPaul and DBISP advertise Lorell mobile stand LLR60266 on GSA *Advantage! See* row 14. KPaul advertises the country of origin as USA and sells the item for $262.33. DBISP advertises the country of origin as Taiwan and sells the item for $177.90. However, on its website, Lorell specifically states that this mobile stand was made in China.

> C. Defendant Reseller KPaul advertises Lorell conference table LLR59587 on GSA *Advantage! See* row 16. KPaul advertises the country of origin as USA and sells the item for $276.62. However, on its website, Lorell specifically states that this mobile stand was made in China.

225.    SPR and all its Defendant Resellers violated the TAA. In its Letter of Supply, SPR was required to guarantee to the Government that it would supply its resellers with TAA compliant products sufficient to satisfy the Government's requirements for the contract period. However, SPR, knowing that its Lorell products were manufactured in China, misrepresented the country of origin to the resellers and to the Government.

226.    All of the Defendant Resellers' contracts at issue were subject to full and open competition and no set-asides were used in awarding any of these contracts to the Defendant Resellers. *See* ¶¶ 22-162 herein. Furthermore, each Defendant Reseller certified to the GSA that products advertised and sold under its respective contract(s) are TAA compliant. *See* clause 52.225-6 *Trade Agreements Certificate* for each relevant contract in ¶¶ 22-162. Based on information it received from SPR, each Defendant Reseller advertised on GSA *Advantage!* that the Lorell products were made in the USA or a TAA designated country. Resellers have a responsibility to confirm the country of origin of the products they sell to the Government because they hold the GSA contract. The failure by SPR to provide true and correct country of origin information for its Lorell products, and the failure by the Defendant Resellers to verify the country of origin of the Lorell products, caused the Government to purchase products that are not TAA compliant.

## C. Qlong, Concept Furniture, Global Furniture, Wok and Pan, Keenston, and King Long

227.    Defendants Qlong, Concept Furniture, Global Furniture, Wok and Pan, and King Long are Chinese manufacturers of office furniture. Each is listed as the manufacturer of Alera products under Defendant Reseller Acorn's contract on GSA. Defendant Keenston is a Hong Kong manufacturer and also listed as the manufacturer of Alera products under Defendant Acorn's contract on GSA. This means that, upon request of the Contracting Officer, each

Defendant Manufacturer must provide a Letter of Supply to Acorn guaranteeing, *inter alia*, that the Alera products it supplies to Acorn are TAA compliant.

228.   Acorn lists Qlong as the manufacturer for 106 office furniture products on GSA *Advantage!* that have the Alera identifier "ALE" on the product name. Exhibit 5 lists twenty-five (25) of those products. As an example, Acorn lists Qlong as the manufacturer for Alera chair ALEEP4218. Acorn lists the country of origin as USA and sells the chair for $293.99. *See* row 3. This chair is listed on Alera's website under the same manufacturer ID number. Alera's Assembly Instructions manual states that this chair was made in China. In addition, Defendant Reseller Axiscore advertises this chair on GSA *Advantage!*. However, Axiscore lists the manufacturer as Alera. Axiscore also lists the country of origin as Taiwan and sells the chair for $207.34. *See* Exhibit 1, row 11.

229.   Acorn lists Concept Furniture as the manufacturer for 150 office furniture products on GSA *Advantage!* that have the Alera identifier "ALE" on the product name. Exhibit 6 lists twenty-two (22) of those products. As an example, Acorn lists Concept Furniture as the manufacturer for Alera bookshelf ALEVA638232MC. Acorn lists the country of origin as USA and sells the item for $293.99. *See* row 4. This bookshelf is listed on Alera's website under the same manufacturer ID number. Alera's Assembly Instructions manual states that this chair was made in China. In addition, Defendant Reseller Replenish Ink advertises this product on GSA *Advantage!* for $236.96. However, Replenish Ink lists the manufacturer as Alera. Replenish Ink also lists the country of origin as USA. *See* Exhibit 2, row 6.

230.   Acorn lists Global Furniture as the manufacturer for 10 office furniture products on GSA *Advantage!* that have the Alera identifier "ALE" on the product name. Exhibit 7 lists five (5) of those products. As an example, Acorn lists Global Furniture as the manufacturer for

Alera chair ALEVN4159. Acorn lists the country of origin as USA and sells the chair for
$352.79. *See* row 2. This chair is listed on Alera's website under the same manufacturer ID
number. Alera's Assembly Instructions manual states that this chair was made in China. In
addition, Defendant Resellers Axiscore and Federal Merchants advertise this product on GSA
*Advantage!*. They too list the country of origin as USA, but they list the manufacturer as Alera.
Axiscore sells the chair for $194.95 and Federal Merchants sells the chair for $305.71. *See*
Exhibit 1, row 17.

231.   Acorn lists Wok and Pan as the manufacturer for 10 office furniture products on
GSA *Advantage!* that have the Alera identifier "ALE" on the product name. Exhibit 8 lists six
(6) of those products. As an example, Acorn lists Wok and Pan as the manufacturer for Alera
folding table ALEFT727230WA. Acorn lists the country of origin as USA and sells the item for
$120. *See* row 4. A sample Bill of Lading (No. EGLV149302758754) shows that Wok and Pan
shipped 249 pieces of this table to USSCo. (ECo's former name) on October 29, 2013. It also
states that the products were made in China. Another sample Bill of Lading (No.
BANQSZX0626626) shows that Wok and Pan shipped another 220 pieces on February 24, 2015.
The port of loading for both of these shipment was Yantian, China (mainland). Defendant
Reseller Replenish Ink also advertises this folding table on GSA *Advantage!* for $103.71.
However, Replenish Ink lists the manufacturer as Alera. It also lists the country of origin as
USA. *See* Exhibit 2, row 20.

232.   Acorn lists Keenston as the manufacturer for 121 office furniture products on
GSA *Advantage!* that have the Alera identifier "ALE" on the product name. Exhibit 9 lists
twenty-seven (27) of those products. As an example, Acorn lists Keenston as the manufacturer
for Alera bookshelf ALEBCS67236MY. It lists the country of origin as USA and sells the item

for $280.24. *See* row 7. A sample Bill of Lading (No. DMCQYAT5128116) shows that Keenston shipped 30 pieces of this bookshelf to USSCo. (ECo's former name) on April 14, 2014. The port of lading was Yantian, China. Another Bill of Lading (No. BANQHKG499248) shows that Keenston shipped another 82 pieces on May 6, 2014. The port of lading was again Yantian, China. A third Bill of Lading (No. DMDUSHZ1876273) shows that 57 pieces were shipped from Keenston to ECo on November 13, 2015. Once again, the port of lading was Yantian, China. Defendant Reseller Replenish Ink also advertises this bookshelf on GSA *Advantage!*. However, Replenish Ink lists the manufacturer as Alera. It also lists the country of origin as USA and sells the item for $299.17. *See* Exhibit 2, row 26. Alera's Assembly Instructions manual states that this item was made in China.

233.    Acorn lists King Long as the manufacturer for 41 office furniture products on GSA *Advantage!* that have the Alera identifier "ALE" on the product name. Exhibit 10 lists eight (8) of those products. As an example, Acorn lists King Long as the manufacturer for Alera shelf ALESW504824BL. Acorn lists the country of origin as USA and sells the shelf for $219.65. *See* row 3. This shelf is listed on Alera's website under the same manufacturer ID number. Alera's Assembly Instructions manual states that this chair was made in China.[33] In addition, Defendant Resellers Axiscore and Replenish Ink also advertise this product on GSA *Advantage!*. Axiscore lists country of origin as Taiwan and sells the shelf for $203.74; Replenish Ink lists country of origin as USA and sells the shelf for $313.11. *See* Exhibit 2, row 14.

234.    On information and belief, Defendants Qlong, Concept Furniture, Global Furniture, and Wok and Pan manufacture office furniture products for Defendants ECo *and* SPR

---

[33] This Alera Assembly Instructions manual also lists King Long's customer service contact information.

in China. On information and belief, Defendant Keenston, although headquartered in Hong Kong, actually manufactures office furniture products for Defendant ECo in China. On information and belief, Defendant King Long also manufactures office furniture products for Defendant ECo in China. All of these products are advertised on GSA *Advantage!*, through multiple resellers, under false country of origin information.

235.    Import data shows that Defendants ECo and SPR imported office chairs from Defendant Manufacturer Qlong. Online website *listthe.com*[34] shows that Qlong has supplied 500 productions to Defendant ECo[35] and 79 productions to Defendant SPR. In addition, as mentioned in paragraph 214-A, a sample Bill of Lading (No. DMCQNPO0594936) shows that the following Alera office furniture products were shipped from Defendant Manufacturer Qlong to ECo on July 21, 2015: ALERL22LS10B, ALERL21LS10B, and ALERL23LS10B. The port of loading for the shipment was Ningbo, China (mainland).

236.    Import data shows that Defendants ECo and SPR imported desks and desk-cabinets from Defendant Manufacturer Concept Furniture. *listthe.com* shows that Concept Furniture supplied 337 productions to Defendant ECo[36] and 315 productions to Defendant SPR.

237.    Import data shows that Defendants ECo and SPR imported office chairs from Defendant Manufacturer Global Furniture. *listthe.com*[37] shows that Global Furniture supplied 28 productions to Defendant ECo[38] and 17 productions to Defendant SPR.

---

[34] https://www.listthe.com/essendant?page=1

[35] 392 productions to United Stationers Supply (ECo's former name) and 108 to Essendant.

[36] 273 productions to United Stationers Supply (ECo's former name) and 64 to Essendant.

[37] https://www.listthe.com/essendant?page=3

[38] 25 productions to United Stationers Supply (ECo's former name) and 3 to Essendant.

238.    Import data shows Defendants ECo and SPR imported bookcases from Defendant Manufacturer Wok and Pan. *listthe.com*[39, 40] shows that Wok and Pan supplied 30 productions to Defendant ECo[41] and 6 to SPR. As mentioned in paragraph 231, Sample Bills of Lading show that Wok and Pan shipped the following Alera office furniture products to USSCo. (ECo's former name) on October 29, 2013 and again on February 24, 2015: ALEFT727218WA, ALEFT726018WA, ALEFT727230WA, ALEFT726030WA, ALEFT724824WA. The port of loading for both of these shipment was Yantian, China (mainland).

239.    Import data shows that Defendant ECo imported bookcases from Defendant Manufacturer Keenston. *listthe.com* shows that Keenston supplied 25 productions to Defendant ECo.[42] In addition, as mentioned in paragraphs 214-C and 232, a sample Bill of Lading (No. DMCQYAT5128116) shows that Keenston shipped the following Alera office furniture items to USSCo (ECo's former name) on April 14, 2014: ALEBCS67212MC, ALEBCS67212MO, ALEBCR44836MO, ALEBCS67236MY, ALEBCS78436MY, ALEVA503333. The port of loading for the shipment was Yantian, China (mainland). Another Bill of Lading (No. BANQHKG4992487) shows that Keenston shipped the following Alera office furniture items to USSCo (ECo's former name) on May 6, 2014: ALEBCS67236MY, ALEBCS44836MC, ALEBCS56036MY, ALEBCS67212MY, ALEBCS67236MO, ALESE216630ES, ALERN216630CM, ALERN234824CM, ALERN312715CM, ALEBCR23036MO. The port of loading for this shipment was also Yantian, China (mainland). A third Bill of Lading (No. DMDUSHZ1876273) shows that Keenston shipped the following Alera office furniture items to

---

[39] https://www.listthe.com/united-stationers?page=2

[40] https://www.listthe.com/sp-richards?page=3

[41] 23 productions to United Stationers Supply (ECo's former name) and 7 to Essendant.

[42] 23 productions to United Stationers Supply (ECo's former name) and 2 to Essendant.

ECo on November 13, 2015: ALEBCS67212MC, ALEBCS67236MY, ALEBCS78436MY, ALEBCS67212MY, ALEBCS33636MY, ALEBCS78436MC, ALEBCS33636MC. The port of lading was again Yantian, China. This third Bill of Lading also specifically states that the country of origin is China.

240.    Import data shows that Defendant ECo imported shelves from Defendant Manufacturer King Long. *listthe.com*[43] shows that King Long supplied 97 productions to Defendant ECo and 18 productions to Defendant USSCo (ECo's former name) over the years.

## D. Fellowes, Inc. and its resellers

241.    Fellowes, Inc. has been knowingly providing false country of origin information and/or supplying noncompliant products to *at least* twenty-one (21) Defendant Resellers to advertise and sell to the Government on GSA *Advantage!* in violation of the TAA. Fellowes, Inc. has even drop-shipped its non-compliant products directly to the Government from its distribution centers.

242.    In September 2018, Relator Castillejos asked Patricia Lenoir, Supply Technician, to order three shredders for his department. On September 26, 2018, Ms. Lenoir ordered three Fellowes AutoMax 500CL shredders (Manufacturer Part No.: 4655301) from Defendant Reseller Vee Model on GSA *Advantage!* (Purchase order number 47QDCC18MKXRH). She specified that the shredders should be shipped to the following address: NAS [Naval Air Station] North Island, Building 662, Bay 2, San Diego, CA 92135. Each shredder cost $1,444.10 for a total of $4,332.30.

243.    The shredders arrived at the naval warehouse on November 16, 2018. Dennis Fore, Material Handler, signed off on the delivery of the shredders. The Packing Slip shows that

---

[43] https://www.listthe.com/king-long-metal-industrial

the shredders were drop-shipped from the Fellowes, Inc. warehouse located at 3051 Marion Dr., Suite 107, Las Vegas, NV to the naval base in San Diego, CA by SAIA Motor Freight, Inc. The Packing Slip also shows that the shipment was coordinated by SYNNEX Corporation, a distributor headquartered in Fremont, CA.

244.    Ms. Lenoir sent Relator Castillejos an email on November 26, 2018 inquiring about the delivery of the shredders. Relator Castillejos located the shredders to respond to Ms. Lenoir and saw that labels on the shipment boxes state that the shredders were made in China. In addition, he saw that the product identification sticker on the shredder also states that the product was made in China. *See* Images 6 and 7 below.

**Image 6**



Image 7



245.    Relator Castillejos learned that Mr. Jessen, Logistics Specialist – Petty Officer 2nd Class, also ordered the same shredder. However, his shredder has not yet been delivered at the time of this writing.

246.    Defendant Reseller Vee Model lists the country of origin of the shredder as United States of America on GSA *Advantage!*. *See* Image 8 below.

**Image 7**



245.    Relator Castillejos learned that Mr. Jessen, Logistics Specialist – Petty Officer 2nd Class, also ordered the same shredder. However, his shredder has not yet been delivered at the time of this writing.

246.    Defendant Reseller Vee Model lists the country of origin of the shredder as United States of America on GSA *Advantage!*. *See* Image 8 below.

**Image 8**



247. This means that Fellowes, Inc. had the Fellowes shredder in its possession; knew that Vee Model is required to sell TAA compliant products to the Government in accordance with the Letter of Supply it had to provide to Vee Model; knew that the shredders in this order were made in China; knew that China is not a TAA designated country; and knew that the shredders were being delivered to the Navy, a department of the United States Government, because it drop-shipped them from its distribution center in Las Vegas, NV. Fellowes, Inc. knowingly supplied non-TAA-compliant shredders to Vee Model to sell to the Government and misrepresented to Vee Model and the Government that the shredders were made in the USA.

248. This shredder is also advertised on GSA *Advantage!* by Defendant Resellers ADSI, KPaul, and Bahfed. ADSI and KPaul also list the country of origin as USA and sell the product for $1,444.14 and $1,599.98, respectively. Bahfed lists the country of origin as Taiwan,

a TAA designated country, and sells the shredder for $1,595.05. *See* Exhibit 11, row 2. Online, Fellowes, Inc. advertises the country of origin of the shredder as China and the product as not being TAA compliant.

249. Research into other products of Fellowes, Inc. listed on GSA *Advantage!* reveals that this Defendant advertises many other products to the Government that are not TAA compliant because they were made in China. Exhibit 11 lists thirteen (13) other Fellowes, Inc. products advertised by Defendant Resellers Axiscore, Federal Merchants, Zee Tech., KPaul, JLWS, Vee Model, Bahfed, ADSI, Business Express, Photikon, CSG, CTI, Firstcall, Focus Camera, AT Networks, American Toner and Supply, Precision Imaging, Adorama, Diltex, Inc., AE Supply, and STEC-Steadfast that were made in China.

250. Fellowes, Inc. and all its Defendant Resellers violated the TAA. In its Letter of Supply, Fellowes, Inc. was required to guarantee to the Government that it would supply its resellers with TAA compliant products sufficient to satisfy the Government's requirements for the contract period. However, Fellowes, Inc., knowing that its products were manufactured in China, misrepresented the country of origin to the resellers and to the Government.

251. All of the Defendant Resellers' contracts at issue were subject to full and open competition and no set-asides were used in awarding any of these contracts to the Defendant Resellers. *See* ¶¶ 22-162 herein. Furthermore, each Defendant Reseller certified to the GSA that products advertised and sold under its respective contract(s) are TAA compliant. *See* clause 52.225-6 *Trade Agreements Certificate* for each relevant contract in ¶¶ 22-162. Based on information it received from Fellowes, Inc., each Defendant Reseller advertised on GSA *Advantage!* that the Fellowes, Inc. products were made in the USA or a TAA designated country. Resellers have a responsibility to confirm the country of origin of the products they sell to the

Government because they hold the GSA contract. The failure by Fellowes, Inc. to provide true and correct country of origin information for its products, and the failure by the Defendant Resellers to verify the country of origin of the Fellowes, Inc. products, caused the Government to purchase products that are not TAA compliant.

252. Bills of Lading show that Fellowes, Inc. imports products from different Chinese manufacturers which make products in mainland China. These products are then advertised on GSA *Advantage!* under a false country of origin by the Defendant Resellers. For example, import records show that Fellowes Office Products (Suzhou) Co., Ltd., located at 1 Shi Ling Rd, Suzhou New District Suzhou City, Jiangsu Province 215151 P.R.C, often ships products to Fellowes, Inc. in Illinois. These products include shredders. In addition, import records show that Fellowes Business Machines (Suzhou) also ships products to Fellowes, Inc. in Illinois. These products include air purifiers and office supplies. Fellowes Business Machines is located at No. 98, Suhui Road, Suzhou, Jinagsu 215000 and/or 11 F, Guojian Building, Suzhou Indus. Suzhou, JS China.

253. These import records also show that the Fellowes facilities in Suzhou, China have shipped products of the following Chinese manufacturers to Fellowes, Inc. in Illinois. Online website *listthe.com[44]* shows how many products these Chinese manufacturers have supplied to Fellowes, Inc.

1) **Bonsen Electronics Ltd.**

   a. Manufacturer of business machines, including shredders and laminators

   b. Located at: No.12, Lun Pin Chong Industrial Zone, San Tun Community, Hou Jie Town, Dong Guan, Guang Dong, China

   c. Supplied at least 1 production to Fellowes Inc. and 13 productions to Fellowes Canada

---

[44] https://www.listthe.com/fellowes

2) **Future Goal Co. Ltd.**

    a. Located at: No.811 West Hongye Road, Xiuzhou Industrial Park, Jiaxing, Zhejiang, China (314000)

    b. Supplied at least 15 productions to Fellowes Inc. and 37 productions to Fellowes Canada

3) **China Ningbo Cixi Imp. & Exp. Corp.**

    a. Located at: 269 Sishan Rd., Cixi, Ningbo, Zhejiang, China

4) **Ningbo Tianhong Stationary Co., Ltd.**

    a. Manufacturer of office products and business machines

    b. Located at: No. 8, Tianshan Road, Industry Zone Of Changjie Town, Ninghai County, Ningbo, Zhejiang, China

    c. Supplied at least 7 productions to Fellowes Inc. and 31 productions to Fellowes Canada

5) **Anhui Light Industries International Co., Ltd.**

    a. Located at: 8 Tianda Road, Hefei, Anhui, China

6) **Ningbo Silvertie Foreign Economic & Trading Co. Ltd**

    a. Located at: Floor 18, Hualian Building, No.238, Zhongshan east road, Ningbo, Zhejiang, China (Mainland)

7) **Ningbo Binbin Stationery Co., Ltd.**

    a. Located at: Haishu Industrial Zone, Binbin Mansion, No 88, Duantang W. Rd., Ningbo 315010, China

8) **Yixing City Yulong Plastic Adhesive Packing Products Co., Ltd.**

    a. Located at: Gepan Road, No. 10, Guanlin Industrial Park C, Yixing, Wuxi, Jinagsu Province, China 214251

9) **Ningbo Kingsui Rubber & Electronics Machinery Co. Ltd.**

    a. Located at: No.13 street, Hou Shi, Zhen Hai, Ningbo, China

b. Supplied at least 6 productions to Fellowes Inc. and 16 productions to Fellowes Canada

## 10) Cixi Duja Electronic Appliance Co., Ltd.

a. Located at: 26 Xiaotuanpu Road, Guanhaiwei Town, Cixi NingBo City, China

b. Supplied at least 3 productions to Fellowes Inc. and 19 productions to Fellowes Canada

## 11) Ningbo Changjiang Printing Development Co., Ltd.

a. Located at: No.368 South Qihang Road, Yinzhou Dist., Ningbo, Zhejiang, China (Mainland)

b. Supplied at least 5 productions to Fellowes Inc. and 4 productions to Fellowes Canada

## 12) Hangzhou Supu Business Machine Co., Ltd.

a. Located at: No. 119 East Huancheng Road, Shangcheng District, Hangzhou, China, 310009

## 13) Kunshan Hung Hsing Electric Co., Ltd.

a. Manufacturer of air purifiers and humidifiers

b. Located at: No.78, Yuan Feng Road, Yushan Town, Kunshan City, Jiangsu, China

c. Supplied at least 11 productions to Fellowes, Inc. and 22 productions to Fellowes Canada

## 14) Bona Futurus Enterprises Ltd.

a. Located in Shanghai, China

254.    Products made by these Chinese manufacturers are then advertised on GSA

*Advantage!* by many resellers under a false country of origin. Fellowes, Inc. is listed as the

manufacturer of these products. *See* Exhibit 11.

## VII. PERIOD OF WRONGDOING

255. Relator alleges that the wrongdoing has been ongoing since *at least* 2013. Import data shows that Defendant Qlong has been shipping Chinese furniture products to Defendant ECo since at least June 2013. Import data shows that Defendant Wok and Pan has been shipping Chinese furniture products to Defendant ECo since at least October 2013. Import data shows that Defendant Global Furniture has been shipping Chinese furniture products to Defendant ECo since at least November 2013. Import data shows that Defendant Concept Furniture has been also shipping Chinese furniture products to Defendant ECo since at least November 2013. Import data shows that Defendant Keenston has been shipping Alera furniture products from a port in China to Defendant ECo since at least April 2014.

256. Exhibit 12 lists an additional twenty-nine (29) products of Defendant Suppliers ECo, SPR, and Fellowes, Inc. that were purchased by the Government from the Defendant Resellers. These purchases date back to October 2007, when the Government purchased Fellowes non-magnetic desktop copy holders from Defendant Reseller WECsys. *See* row 25.

257. The Defendant Resellers' contract periods are listed in paragraphs 22-162 herein. Some of these contracts date back to 2009 and an inference can be made that the wrongdoing began much earlier.

258. Relator has learned that Defendant Axiscore has been advertising the Alera Logan Series Mesh High-Back Swivel Chair (Manufacturer Part No.: ALELG41ME10B) on GSA *Advantage!* since 2014. This is the chair that first alerted Relator Castillejos to the wrongdoing alleged herein.

## COUNT I: FALSE OR FRAUDULENT CLAIMS
### 31 U.S.C. § 3729(a)(1)(A)

259. The Plaintiff-Relator repeats and re-alleges each allegation in each of the preceding paragraphs as if fully set forth herein.

260. By virtue of the acts described above, Defendant Suppliers ECo, SPR, and Fellowes, Inc., and Defendant Resellers Axiscore, Replenish Ink, Laser Plus Imaging, and Vee Model knowingly or in deliberate ignorance or reckless disregard of the truth submitted or caused to be submitted false or fraudulent claims for payment by the United States because they falsified the country of origin of products sold to the United States that did not originate in the United States or a designated country under the TAA, 19 U.S.C. §§ 2511-2512 and 48 CFR §§ 25.400 et *seq.*

261. The other Defendant Resellers also maintain GSA contracts under which they advertise products of the Defendant Suppliers and/or Defendant Manufacturers using a false country of origin. These contracts date back to 2009 in some instances. Based on this information, Relator asserts that the other Defendant Resellers have knowingly or in deliberate ignorance or reckless disregard of the truth submitted false or fraudulent claims for payment by the United States whenever the Government has purchased such non-compliant products throughout the years.

262. Defendant Manufacturers have provided false country of origin information to Defendant Reseller Acorn for products of Defendant Suppliers that are advertised by Acorn on GSA *Advantage!*. As such, Relator asserts that Defendant Manufacturers knowingly or in deliberate ignorance or reckless disregard of the truth caused the submission of false or fraudulent claims for payment by the United States whenever the Government purchased such non-compliant products from Defendant Reseller Acorn throughout the years.

Page **89** of **94**

263. The United States, unaware of the falsity of the statements and/or claims made by Defendants, and in reliance of their accuracy, paid false claims because Defendants knowingly or in deliberate ignorance or reckless disregard of the truth sold products to the Government that did not originate in the United State or a designated country, while falsely certifying compliance with the TAA.

264. The falsity of the claims for payment presented by Defendants for products manufactured in non-designated countries was material, as the term is defined in the False Claims Act and interpreted by the courts. The May 2016 notice issued by GSA to contract holders makes it clear that any non-TAA-compliant products will be deleted from GSA *Advantage!* and may result in the removal of the contractor's entire GSA *Advantage!* file.

265. Had federal procurement officials knowns the true origins of Defendants' non-TAA-compliant products, the Government would not have purchased or paid for those products.

266. Defendants' knowing presentation of false claims for payment by the United States has violated 31 U.S.C. § 3729(a)(1)(A) and has damaged, and continues to damage, the United States in an amount to be determined at trial.

## COUNT II: FALSE STATEMENTS MATERIAL TO FALSE CLAIMS
## 31 U.S.C. § 3729(a)(1)(B)

267. The Plaintiff-Relator repeats and re-alleges each allegation in each of the preceding paragraphs as if fully set forth herein.

268. By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, and continue to make, use, or cause to be made or used, false statements and/or records that were and are material to false or fraudulent claims for payment by the United States. Defendants falsely certified that all products offered for sale to the United States were made or substantially transformed in the United States or in TAA designated

countries, and/or Defendants certified that they would provide accurate country of origin information, where, in fact, Defendants provided materially false country-of-origin information.

269. The false statements and/or records that Defendants knowingly made, used, or caused to be made or used were material, as the term is defined in the False Claims Act and interpreted by the courts. The May 2016 notice issued by GSA to contract holders makes it clear that any non-TAA-compliant products will be deleted from GSA *Advantage!* and may result in the removal of the contractor's entire GSA *Advantage!* file.

270. The United States was unaware of the falsity of the statements and/or records that Defendants made, used, or caused to be made or used, and relied on the accuracy of those statements and/or records.

271. Had Defendants made, used, or caused to be made or used, accurate statements and/or records regarding the origins of their non-TAA-compliant products, the Government would not have purchased or paid for those products.

272. Defendants' knowing creation and use of false statements and/or records in a manner material to false claims under the Defendant Resellers Government contracts has violated 31 U.S.C. § 3729(a)(1)(B) and has damaged, and continues to damage, the United States in an amount to be determined at trial.

## COUNT III: AVOIDING OBLIGATION TO PAY
## 31 U.S.C. § 3729(a)(1)(G)

273. The Plaintiff-Relator repeats and re-alleges each allegation in each of the preceding paragraphs as if fully set forth herein.

274. At the time it provided false country of origin information for its Alera products to its resellers and/or at the time it drop-shipped the Alera office chairs to the Navy warehouse, Defendant ECo knew or should have known that it misrepresented compliance with material

applicable regulations and, as a result, was paid money, through its resellers, to which it was not entitled when the Government purchased its Alera products.

275.    Similarly, at the time it provided false country of origin information for its products to its resellers and/or at the time it drop-shipped the shredders to the Navy warehouse, Defendant Fellowes, Inc. knew or should have known that it misrepresented compliance with material applicable regulations and, as a result, was paid money, through its resellers, to which it was not entitled when the Government purchased its products.

276.    At the time it provided false country of origin information for its Lorell to its resellers and/or at the time it supplied office products in violation of the TAA to Defendant Reseller Laser Plus Imaging to sell to the Government, Defendant SPR, knew or should have known that it misrepresented compliance with material applicable regulations and, as a result, was paid money, through its resellers, to which it was not entitled when the Government purchased its Lorell products.

277.    Defendant Resellers also knew or should have known that they misrepresented compliance with material applicable regulations when they advertised and sold non-TAA-compliant products of Defendant Suppliers/Manufacturers on GSA *Advantage!* under a false country of origin and, as a result, were paid money to which they were not entitled when the Government purchased these products.

278.    At the time they provided false country of origin information to Defendant Reseller Acorn to advertise and sell to the Government products that were made in China on GSA *Advantage!*, Defendant Manufacturers knew or should have known that they misrepresented compliance with material applicable regulations and, as a result, were paid

money, through Defendant Reseller Acorn, to which they were not entitled when the Government purchased these non-TAA-compliant products from Defendant Acorn.

279. Accordingly, Defendants made and used or caused to be made or used false records or statements material to an obligation to pay or transmit money to the United States, or knowingly concealed, avoided, or decreased an obligation to pay or transmit money to the United States. Such false records or statements or knowing concealment, avoidance or decrease of an obligation to pay or transmit money to the United States were made or done knowingly, as defined in 31 U.S.C. § 3729(a)(1)(A). Failure to return any overpayment constitutes a reverse false claim under 31 U.S.C. § 3729(b)(1) of the False Claims Act.

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, Relator Castillejos prays that judgment be entered in favor of the United States and the Relator against the Defendants jointly and severally as follows:

1. On Counts I, II, and III enter judgment holding the Defendants jointly and severally liable for a civil penalty of $11,000, adjusted for inflation, for each violation of the federal False Claims Act committed by the Defendants;

2. On Counts I, II, and III enter a judgment against the Defendants jointly and severally for three times the amount of damages sustained by the United States of America because of the acts of the Defendants;

3. Award the Relator a percentage of the proceeds of the action in accordance with 31 U.S.C. § 3730;

4. Award the Relator his costs and reasonable attorneys' fees and costs for prosecuting this action; and

5. All other relief as may be required or authorized by law in the interest of justice.

## DEMAND FOR JURY TRIAL

The Relator, on behalf of himself and the United States, demands a jury trial on all claims

alleged herein triable by jury.

Dated: January 16, 2019

Respectfully submitted,

The Relator Ryan Paul Castillejos
by his Counsel,

Jeffrey A. Newman, Esq.
Massachusetts BBO # 370450
Jeffrey Newman Law
One Story Terrace
Marblehead, Ma. 01945
Tel: 617-823-3217
Fax: 781-639-8688
Jeffrey@jeffreynewmanlaw.com